221 So.2d 666 (1969)
Frankie C. BOX and Rudy Mirandona, Jr.
v.
John DOE, Niagara Fire Insurance Company and the Vico Insurance Company.
No. 3372.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1969.
Rehearing Denied May 5, 1969.
*667 Birdsall, Alvarez & Leyda, Benjamin J. Birdsall, Jr., Richard D. Alvarez, New Orleans, for plaintiff-appellee.
Christovich & Kearney, James F. Holmes, New Orleans, for defendant-appellant.
Porteous, Toledano, Hainkel & Johnson, C. Gordon Johnson, Jr., New Orleans, for Vico Insurance Company, defendant-appellee.
Before REGAN, SAMUEL and HALL, JJ.
HALL, Judge.
Miss Frankie C. Box and Rudy Mirandona, Jr., brought this suit against Niagara Fire Insurance Company and Vico Insurance Company seeking to recover their respective damages for personal injuries received by them on June 16, 1965 when they *668 were allegedly struck by a "hit-and-run" automobile. Following trial on the merits judgment was rendered in favor of Frankie C. Box in the sum of $3,931.40 and in favor of Rudy Mirandano, Jr. in the sum of $277.50, together with interest and costs, both judgments being against Niagara Fire Insurance Company. Plaintiffs' suit as to Vico Insurance Company was dismissed, the Trial Judge being of the opinion that Vico's policy was excess insurance and the damages awarded plaintiffs did not exceed the amount of primary coverage afforded by Niagara's policy. Niagara Insurance Company appealed. Quantum is not at issue.
The record reveals that the accident happened on Wednesday, June 16, 1965 at approximately 11:55 P.M. in the 900 block of Decatur Street in the City of New Orleans. Prior to the accident Frankie Box and Rudy Mirandano, Jr. had driven a 1963 Studebaker automobile to the 900 block of Decatur Street and had parked it on the river side of the street facing in a downtown direction, or away from Canal Street. They had locked the car and had gone to "Harry's Place" about a block away. Returning to the car a few hours later they stepped from the river side sidewalk of Decatur around the rear of the parked automobile and approached the left front door from the rear intending to enter the car from the driver's side. Frankie Box handed the car keys to Mirandona, who inserted the key in the lock preparatory to opening the door. Miss Box was standing in the street close to the car near Mirandona but toward the rear of the car waiting for him to open the door. At this very moment both of them, without warning of any kind, were struck from behind by an automobile proceeding downtown on Decatur Street. Both were hit and thrown into the side of the parked Studebaker and injured. The automobile which struck them never stopped nor slowed but continued at a rapid rate of speed down Decatur Street. Neither of the plaintiffs had seen the automobile which struck them and could not describe it nor identify its driver. Both were taken to the Baptist Hospital.
The 1963 Studebaker belonged to Ursula B. Carver who was the named insured in the public liability policy issued by Niagara Fire Insurance Company. Mrs. Carver had married Frankie Box's father on June 12, 1965 just four days prior to the accident and had given Frankie Box permission to use the car while she and her husband were honeymooning in Texas.
Frankie Box herself owned a 1965 Volkswagen and was the named insured in a public liability policy issued by Vico Insurance Company.
Plaintiffs sued both insurance companies under the Family Protection or Uninsured Motorist clauses of the policies which provide that the insurer will pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury caused by accident arising out of the ownership, maintenance or use of such uninsured automobile.
Under the Uninsured Motorist clauses of both the Niagara and Vico policies an insured is covered by the insurance contract if injured by a "hit-and-run" automobile as defined in both policies in identical language reading in part as follows:
"`Hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident provided: (a) there cannot be ascertained the identity of either the operator or the owner of such hit-and-run automobile * * *"[1]
*669 Counsel for both Niagara and Vico contend that this language clearly calls for some effort or attempt on the part of the insured to identify the owner or operator of the offending vehicle. The record shows that although the plaintiffs themselves made no effort to identify the owner or operator, the New Orleans Police Department did. Officer Richard Condon, Jr., who investigated the accident, found a witness at the scene who described the automobile which struck plaintiffs as a white over green 1958 Ford bearing the license No. 17B697. Officer Condon relayed this information to the Hit and Run Division of the Police Department. Officer John Schwall, an investigator for this Division, testified that he checked the license number and found that the license plate had been issued to a Dudley R. Bilchrist, 7431 Chef Menteur Highway, for a 1958 Chevrolet automobile (no color given). He went to the address given and found that there was no record of Mr. Bilchrist living there. Neither Mr. Bilchrist nor the car was ever found and the Police Department closed the case as a hit-and-run accident.
In our opinion plaintiffs are entitled to the benefit of the police investigation. In the first place the policies do not specify that the investigation should be conducted by the insured, and plaintiffs assuredly could not be expected to obtain more information than the Police Department whose duty it is and who are trained to make such investigations. Moreover the policies provide that the police be notified of such accidents within 24 hours. We are of the opinion that since neither the owner nor the operator of the automobile which struck plaintiffs have ever been found or identified, it is a "hit-and-run automobile" within the meaning of the two policies.
The next question presented is whether Frankie Box and Rudy Mirandona, Jr. can be classed as insured under Niagara's policy. The uninsured motorist provision of the policy is contained in Part IV thereof and the policy provides:
"The definitions under Part I, except the definition of `insured' apply to Part IV and under Part IV `insured' means
"(a) the named insured and any relative;
"(b) any other person while occupying an insured automobile, and
"(c) any person with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above."
Under Part I of the policy "`relative' means a relative of the named insured who is a resident of the same household."
The policy further provides that the word "occupying" as used in subsection (b) of the above quoted definitions "means in or upon or entering into or alighting from."
It is clear that Rudy Mirandona, Jr. is an insured under the provisions of Niagara's policy. At the time he was struck he was engaged in unlocking the door of the 1963 Studebaker. The car key was broken off in the lock as a result of the accident. He was "occupying" the car in that he was "entering into" it. As a matter of fact Niagara concedes that he is an insured under the terms of its policy.
Is Frankie Box also an insured under the terms of Niagara's policy? At the time of the accident she was the stepdaughter of the named insured (Ursula B. Carver) and therefore in our opinion a "relative" within the generally accepted meaning of the word. Webster's New International Dictionary (Second Edition) defines "relative" as "a person connected with another by blood or affinity," and defines "affinity" as the "relationship by marriage between a husband and his wife's blood relations or between a wife and her husband's blood relations." See discussion in Liprie v. Michigan Millers Mutual Insurance Company, La.App., 143 So.2d 597.
*670 Was Frankie Box a "resident of the same household" as the named insured, Ursula B. Carver, at the time of the accident? The record reveals that Frankie Box resided with her father at his residence in New Orleans and was living at this residence on the date of the accident. Four days prior to the date of the accident her father married Ursula B. Carver, a resident of Baker, Louisiana, and the newly married couple left immediately on their honeymoon to Texas.
Up to the date of the accident Ursula B. Carver had never occupied the residence in New Orleans where her husband and his daughter lived, although upon returning from their honeymoon shortly after the accident Ursula B. Carver and her husband came to New Orleans and set up their home in his New Orleans residence where she took care of Frankie Box during her convalescence.
A married woman has no other domicile than that of her husband (LSA-C.C. Art. 39) and she is bound to live with her husband and to follow him wherever he chooses to reside (LSA-C.C. Art. 120). From the very moment of Ursula B. Carver's marriage to Frankie Box's father, his domicile became her domicile and she became a legal resident of his household.
The Supreme Court in Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 178 So.2d 238, had occasion to construe the identical policy phrase "a relative of the named insured who is a resident of the same household." In that case an unemancipated minor left his father's home in Arkansas and came to Louisiana to reside and work with his uncle. At the time of the accident the boy's factual residence was with his uncle in Louisiana, although as the Court held, his legal residence was with his father in Arkansas.
The Court held that at the time of the accident the boy was a "resident" of his father's "household" in Arkansas within the meaning of the policy, thus in effect holding that the word "resident" as used in the policy covered or included legal residence. Mr. Justice McCaleb brings this out clearly in his concurring opinion.
On the basis of the Supreme Court's decision in the Taylor case we hold that Ursula B. Carver became a "resident" of her husband's home in New Orleans within the meaning of Niagara's policy from the moment of her marriage and that since she, legally, and Frankie Box, factually and legally, were residents of the same household at the time of the accident Frankie Box is an insured within the provisions of the Niagara policy.
The next question presented is whether Frankie Box is covered with respect to a hit-and-run automobile under Vico's policy issued to Frankie Box on her Volkswagen (which was not involved in the accident) and if so was it primary or excess coverage? (Niagara concedes that Rudy Mirandona, Jr. is not covered by the Vico policy.)
The Uninsured Motorist provisions (Part IV) of the Vico policy including the definitions are identical with those contained in Part IV of the Niagara policy quoted supra. Frankie Box is an insured under those provisions of the Vico policy since she is the named insured in the policy.
With reference to excess coverage Part IV of the Vico policy provides:
"Other insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance." (emphasis supplied)
Does the excess coverage clause of the Vico policy apply to Frankie Box? It *671 could apply to her only if she were occupying the 1963 Studebaker at the time of the accident. Since she was neither "in" "upon" nor "alighting from" the Studebaker, the excess coverage clause could apply to her only if she was "entering into" the Studebaker at the time of the accident. It is obvious to us that she was not. She was simply standing still in the street waiting for Mirandona to open the car door. There is no evidence that she was in anyway in contact with the car, and no evidence that she was doing any act which could be remotely considered as entering it. Her mere intention to enter after the door was unlocked is not sufficient in our opinion to constitute "entering". "Entering" is an affirmative act or movement to effect an entrance.
We therefore are of the opinion that the Vico policy is not excess coverage as to Frankie Box but is concurrent coverage with that afforded her by the Niagara policy.
The Niagara policy in Part IV contains an "Other Insurance" or excess coverage provision identical with that quoted from the Vico policy supra. The next following paragraph of both policies reads as follows:
"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance." (emphasis supplied)
We take this to mean, as applied to the present case, that when the excess clause is not applicable to an insured the loss must be pro-rated between Niagara and Vico. Since the excess coverage clause is not applicable to Frankie Box her damages must be pro-rated between Niagara and Vico, the liability of each being limited to its pro-rata share of the loss.
Since the uninsured motorist coverage under both policies is $5,000.00 for each person and $10,000.00 for each accident the liability of each insurer to Frankie Box is limited to 50% of the amount of damages awarded her. The judgment in her favor against Niagara for $3,931.40 must therefore be reduced to the sum of $1,965.70. We would render a like judgment in her favor against Vico for $1,965.70 but for the fact that she did not appeal from that part of the judgment dismissing her suit against Vico and that part of the judgment is now final. See the consolidated suits of Barrios et al. v. Noto et als., and Noto v. Crowell et al., 215 So.2d 676 (Writ refused November 18, 1968).
For the foregoing reasons the judgment appealed from is amended by reducing the amount awarded Frankie C. Box against Niagara Fire Insurance Company from $3,931.40 to the sum of $1,965.70, and as so amended and in all other respects the judgment is affirmed; costs of this appeal to be borne by Frankie C. Box and Niagara Fire Insurance Company in equal proportions.
Amended and affirmed.
Rehearing denied.
SAMUEL, J. is of the opinion that a rehearing should be granted.
NOTES
[1] Of course if either the owner or the driver of the hit-and-run automobile is identified plaintiffs must then prove the automobile was uninsured.