738 So.2d 93 (1999)
Marcia NEWBY and Tracy Newby, Individually and on Behalf of their minor child, Jennie Jo Newby
v.
JEFFERSON PARISH SCHOOL BOARD and Williams Jose & Gloria Aguizuz, as parents and legal guardians of their minor child, Williams Jose Aguizuz, Jr.
No. 99-CA-98.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
*94 David M. Cambre, Lozes & Cambre, New Orleans, Louisiana, Attorney for Appellants Leonel Antonio Aguiluz and Gloria Ramos Aguiluz.
Timothy J. Falcon, Deani Beard Milano, Falcon Law Firm, Marrero, Louisiana, Attorneys for Plaintiffs Marcia Newby and Tracy Newby.
Ernest L. O'Bannon, Celeste Brustowicz, New Orleans, Louisiana, Attorneys for defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and THOMAS F. DALEY.
CANNELLA, Judge.
Defendants, Leonel and Gloria Aguizuz,[1] as the parents and tutor of their minor child, Williams Jose Aguizuz, and Williams Jose Aguizuz (Willie) individually, after he *95 attained the age of majority (these 3 defendants are referred to herein as the Aguizuzes), appeal from the summary judgment rendered in favor of their homeowners insurance company, Audubon Insurance Company (Audubon), finding that Audubon did not provide coverage for the injuries allegedly sustained by plaintiffs, Marcia and Tracy Newby, individually and on behalf of their minor daughter, Jennie Jo Newby (Jennie Jo)(these 3 plaintiffs are referred to herein as the Newbys). For the following reasons, we reverse.
Most facts are not in dispute. Jennie Jo was born on April 17, 1980. Willie was born on March 3, 1977. Jennie Jo first met Willie in October of 1994 while Jennie was in 9 th grade and Willie was in 10th grade at John Ehret High School. They started dating in November of 1994. Sometime thereafter, they started having sexual relations because they thought they were in love. The sexual relations were always consensual. Sometime in March of 1995, Jennie Jo's parents discovered Willie's age and their daughter's sexual activity. Jennie Jo's parents told her to stop going out with Willie. They also met with school personnel, told them of the situation, asked that they keep the pair apart and that they not let Jennie Jo leave school with Willie. Because she would not stop seeing Willie, Jennie Jo was hospitalized in a psychiatric hospital by her parents. Jennie Jo and Willie broke up in April of 1995.
The Newbys sued the Jefferson Parish School System and the Aguizuzes. By supplemental petition, they named Audubon as a defendant. Audubon filed a motion for summary judgment, denying coverage. Following a hearing, the trial court granted the summary judgment in favor of Audubon and dismissed them from the case. It is from this judgment that the Aguizuzes appeal.
The Audubon policy was a general liability policy, providing personal liability coverage for any claim made against an insured for damages because of bodily injury or property damage caused by an occurrence to which the coverage applied. The policy also contained exclusions to coverage. Pertinent here were the following:
1. Coverage EPersonal Liability and Coverage FMedical Payments to Others do not apply to "bodily injury" or "property damage":
a. Which is expected or intended by the "insured";
* * *
k. Arising out of sexual molestation, corporal punishment or physical or mental abuse;
In brief to this court, Audubon concedes that the "intentional injury" exclusion (a) does not excluded coverage for the alleged vicarious liability of Mr. and Mrs. Aguizuz for the acts of their son or for their alleged personal liability for their failure to properly supervise their son. Rather, Audubon only contends that the "intentional injury" exclusion applies to any injuries alleged by plaintiff for which Willie himself is personally liable. Audubon does argue that coverage for both parents' liability, vicarious or personal, and Willie's liability for all alleged damages is excluded under the "sexual molestation" exclusion (k). Audubon contends that under that exclusion "all claims for bodily injury which arise out of sexual molestation are excluded from coverage...."
Appellants argue to the contrary that the intentional injury exclusion does not apply in this case at all. They point out that contrary to some policies which exclude "intentional acts," the Audubon policy only excludes "intentional injury," tying the exclusion to the subjective intent of the insured. There is not one scintilla of evidence to the effect that Willie intended any injury to Jennie Jo. To the contrary, the deposition testimony was that Willie loved Jennie Jo and that sex was never forced and always consensual. Further, defendants argue that the "sexual molestation" exclusion does not apply because this is *96 not a "sexual molestation" case. Jennie Jo stated in her deposition that sex was not coerced but consensual. Every case cited by Audubon involves facts where the victim did not consent to the sexual act. The policy does not define "molestation" and any ambiguity in the policy is to be interpreted in favor of coverage.
Following the amendment of the summary judgment law, summary judgment is now favored. It shall be used to "secure the just, speedy, and inexpensive determination" of all actions, except those excluded by La. C.C.P. art. 969. La. C.C.P. art. 966(A)(2). The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Finally, it is well settled that the appellate review of summary judgment is de novo, applying the same standard as the trial court. Accordingly, we undertake a de novo review of the matter at bar.
In Louisiana, insurance policies are interpreted under the rules governing contract interpretation. La. C.C. art. 2045-2057. Unless a statute or public policy dictates otherwise, insurers have the right to limit liability and enforce conditions or limitations upon their insureds. Language in an insurance policy which is clear, expresses the intent of the parties and does not violate a statute or public policy must be enforced as written. If the insurance policy is susceptible of two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage.
The intentional injury exclusion has been the subject of interpretation by the Louisiana Supreme Court. In Breland v. Schilling, 550 So.2d 609 (La.1989) the court, citing Pique v. Saia, 450 So.2d 654 (La.1984), applied two basic principles of policy interpretation in construing the intentional injury exclusion in the policy: (1) policies should be construed to effect, not deny, coverage; and (2) an exclusion from coverage should be narrowly construed. Then, addressing the scope of the intentional injury exclusion therein, which is identical to the one here in all pertinent respects, the court found the exclusion ambiguous, noting that it only excluded injuries that were intended by the insured and did not exclude injuries that resulted from the intentional act of the insured. Thus, it is the insured's subjective intent which must be considered in determining whether coverage is excluded.
Here, the acts which allegedly caused the plaintiffs injuries involved a "love" relationship between a 17 year old boy and a 14 year old girl which manifested itself in, among other things, sexual intercourse, that continued after the boy's 18 th birthday. The deposition testimony was unequivocal that sex was never coerced and always consensual. There were no facts presented in support of this motion for summary judgment to show that the boy intended injury to the girl or that he knew she was being injured in some way by the acts.
Rather, Audubon argues that the insured's "intent to injure" should be found as a matter of law because he was committing the criminal offense of Carnal Knowledge of a Juvenile in violation of La. R.S. 14:80. We decline to so extend the exclusion.
In writing the policy, the insurer could have written it to exclude injuries that result from intentional acts of the insured. Indeed, in brief, Audubon refers to the exclusion in argument as the "intentional act" exclusion. However, it is critical to our analysis of the issue presented to recognize that this is not an "intentional act" exclusion. The exclusion only applies to bodily "injury" intended by the insured, not to bodily injury that results from acts intended by the insured. As in Breland, in writing the policy, the insurer secured its exclusion to the subjective intent of the *97 insured to cause the injury sustained. There is no evidence presented that Willie intended any injury to Jennie Jo. Further, in the Breland case, plaintiff was injured when he was intentionally struck by defendant in the jaw, which would by law constitute the crime of battery. The court did not find that coverage for the injuries was excluded simply because they resulted from a criminal act. Rather, as required by the policy, the court looked to the subjective intent of the defendant, as to the injuries he intended by his act, in finding that the exclusion did not apply to the injuries sustained because they were not intended by the insured.
Therefore, based narrowly on what is before us, we find that Audubon has not met its burden of showing that it is entitled to judgment as a matter of law on the question of whether the intentional injury exclusion in the policy excluded coverage for injuries to Jennie Jo sustained after Willie reached the age of majority on his 18th birthday in March of 1995,[2] for which he would be personally liable.
Audubon also argues that coverage for the liability of Mr. And Mrs Aguizuz, as well as for Willie, is excluded by the sexual molestation exclusion in the policy. The policy excludes coverage for any injury arising out of "sexual molestation." Audubon seems to base its argument on the premise that any sexual act with a minor, whether forced or coerced, or not, is sexual molestation.
As stated above, under the rules of interpretation of insurance policies, any ambiguity in the policy is interpreted in favor of coverage. In brief, Audubon refers to this exclusion as the "sexual act" exclusion. If in fact the policy excluded liability from injuries that result from "sexual acts", we would not be here today. Rather, the policy, in a much more narrow context, only excludes liability for injuries resulting from "sexual molestation." Unfortunately, there is no definition provided in the policy for the term "molestation."
In Webster's Third New International Dictionary, "molest" is defined as "la: inconvenience, harass, plague ..., b: to affect injuriously ...; 2a: annoy, persecute, disturb, torment ..., b: to meddle or interfere with unjustifiably often as a result of abnormal sexual motivation...." While not precisely applicable to the context of this case, all of the definitions seem to imply some degree of unwanted action.
Moreover, if we look to the criminal law area, where molestation in the sexual context is defined, we find that the added element that distinguishes Carnal Knowledge of a Juvenile, La. R.S. 14:80, cited by Audubon, and Indecent Behavior with a Juvenile, La. R.S. 14:81, from Molestation of a Juvenile, La. R.S. 14:81.2, is "the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of position of control or supervision over the juvenile."
Under the facts as presented on the motion for summary judgment, there are no facts supporting a finding that the sexual acts in question were committed by force, violence, duress, menace, psychological intimidation, threat of great bodily harm or the use of influence by virtue of position of control or supervision over the juvenile. To the contrary, Jennie Jo testified in her deposition, that the acts were by her consent. Whether she could, at age 14 legally consent or not, the fact remains that the acts most certainly occurred without resistance. It must also be noted that during the majority of the relationship, Willie was likewise a minor.
Audubon cites three cases in support of its argument that a sexual act with a minor is by its very nature sexual molestation. We do not find the cases supportive of Audubon's position. To the contrary, all *98 three of the cases cited by Audubon, unlike the case herein, come within the criminal definition of molestation cited aboveby use of force, intimidation or by virtue of a position of control or supervision.[3] They reinforce our view that the term molestation, as used in the policy and not defined, is susceptible of more than one meaning and does not clearly exclude coverage under the facts presented.
Therefore, we find the term in the policy "sexual molestation" to be ambiguous and not clearly applicable to the facts of this case as presented herein.
Accordingly, for the reasons set out above, we vacate the summary judgment granted in favor of Audubon, dismissing them from the case, and remand the case for further proceedings consistent with the views expressed herein.
SUMMARY JUDGMENT VACATED; CASE REMANDED.
DUFRESNE, J., CONCURS.
DUFRESNE, J., CONCURRING.
I respectfully concur.
Although while not agreeing in toto with the majority opinion, I do agree that the summary judgment in favor of Audubon Insurance Company should be vacated and the matter remanded for further proceedings.
NOTES
[1] The spelling of the defendant's name, as listed in the petition and the caption of the case is "Aguizuz". Defendants' counsel and the insurance policy spell the name as "Aguiluz", which is more likely correct. However, because it is referred to in the petition and caption, of the case appealed as "Aguizuz", we will use that spelling.
[2] It should be noted that prior to Willie's 18th birthday any liability for his actions as a minor rests with his parents to which this exclusion, by Audubon's own admission, does not apply.
[3] In Jones v. Doe, 95-1298 (La.App. 3rd Cir. 4/24/96), 673 So.2d 1163, the sexual act was a rape by one boy of another, committed with force, violence and duress. In Duplantis v. State Farm General Insurance Company, 606 So.2d 51 (La.App. 3rd Cir.1992) the sexual act was committed by a nursery school operator on the minor children at the school, that is, by virtue of a position of control or supervision. In Mt. Vernon v. Hicks, 871 F.Supp. 947 (E.D.Mich.1994) the sexual act was an assault committed by a nursing home employee on a resident, that is, by the threat of bodily harm and by virtue of a position of control or supervision.