797 So.2d 694 (2000)
Larry and Linda LIVAS, Individually and on Behalf of Their Minor Daughter, Quanita K. Livas
v.
STATE FARM MUTUAL AUTOMOBILE INS. CO., National General Ins. Co., Illinois National Ins. Co., and Nikki A. Buquet.
No. 99 CA 1169.
Court of Appeal of Louisiana, First Circuit.
July 18, 2000.
Julius Hebert, Hebert & Marceaux, Houma, for Plaintiff/Appellant Larry and Linda Livas.
Edward Lobman, Lobman, Carnahan, Batt & Angelle, New Orleans, for Defendant/Appellee National General Insurance.
*695 Gregory Schwab, Schwab & Schwab, Houma, for Defendant/Appellee State Farm Mutual Ins. Co.
Before: WOODARD, PETERS, and GREMILLION Judges Pro tem. by special appointment of the Louisiana Supreme court.
PETERS, Judge.
The plaintiffs, Larry and Linda Livas, brought this suit individually and on behalf of their minor daughter, Quanita K. Livas (Quanita), to recover for damages they sustained in a two-vehicle accident which occurred in Terrebonne Parish, Louisiana, on June 5, 1996. The defendants in the suit include Nikki A. Buquet, the driver of one of the vehicles involved in the accident; State Farm Mutual Automobile Insurance Co. (State Farm), Ms. Buquet's liability insurance carrier; Illinois National Insurance Co. (Illinois National), an insurer providing uninsured/underinsured motorist insurance (UM) coverage on the Livas' vehicle involved in the accident; and National General Insurance Co. (National General), an insurer providing UM coverage on another vehicle owned by Mr. and Mrs. Livas. The plaintiffs appeal the portion of the trial court's grant of summary judgment in favor of National General, dismissing Quanita's claims.
On June 5, 1996, Linda Livas was involved in an automobile accident while driving a family-owned 1992 Nissan Stanza. Quanita was a passenger in the Nissan. The accident occurred when Mrs. Livas' Nissan was struck by a 1990 Ford Tempo owned by Nelson P. Buquet, driven by Nikki A. Buquet, and insured by State Farm. The Nissan is one of two vehicles owned by the plaintiffs and, at the time of the accident, was insured for UM coverage by Illinois National. The plaintiffs owned a second vehicle, a 1975 Jeep, which, on the day of the accident, was insured for UM coverage by National General. The Illinois National policy provided for $10,000.00 UM coverage, and the National General policy provided for $25,000.00 UM coverage.
The trial court granted National General's motion for summary judgment and dismissed it from the litigation based on an exclusion in the policy as well as the provisions of La.R.S. 22:1460. Thereafter, the Livas perfected this appeal.

OPINION
Appellate courts review summary judgments de novo, using the same analysis as the trial court in deciding whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730. A motion for summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). There is no genuine issue of material fact in this litigation, and the question is whether Illinois General is entitled to judgment as a matter of law.
The substantive law of the instant case involves stacking of multiple UM policies.
Stacking of UM coverages occurs when the amount available under one policy is inadequate to satisfy the damages alleged or awarded the insured and the same insured seeks to combine or stack one coverage on top of another for the same loss covered under multiple policies or under multiple coverages contained in a single policy.
Boullt v. State Farm Mut. Auto. Ins. Co., 99-0942 (La.10/19/99), 752 So.2d 739, 742. In this case, the plaintiffs seek to stack an additional $15,000.00 under the National *696 General policy to the coverage available under the Illinois National policy as compensation for Quanita's injuries.
The law relative to stacking UM coverage has been subject to numerous changes in the past thirty years. Prior to 1972, appellate courts enforced UM policy provisions limiting a claimant's total recovery to the highest limit available under applicable policies. As such, the highest sum recoverable was prorated among UM carriers. See Box v. Doe, 221 So.2d 666 (La.App. 4 Cir.), writ denied, 254 La. 457, 223 So.2d 868 (1969); Wilks v. Allstate Ins. Co., 195 So.2d 390 (La.App. 3 Cir.1967). However, in 1972, the supreme court ultimately determined that the UM provisions which so limited a claimant's recovery violated La. R.S. 22:1406 by not providing a specific minimum amount of coverage. Consequently, the supreme court allowed claimants to stack coverage and recover to the full extent of policy limits under each of multiple UM policies. Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Graham v. American Cas. Co. of Reading, Penn., 261 La. 85, 259 So.2d 22 (1972).
By Acts 1977, No. 623, § 1, the Louisiana Legislature amended La.R.S. 22:1406 by adding subsection D(1)(c) which had the effect of overruling the decisions in Deane and Graham by prohibiting coverage under more than one UM policy except when the claimant is injured while occupying an automobile not owned by him. La.R.S. 22:1406(D)(1)(c). Acts 1988, No. 203, § 1, effective September 9, 1988, amended La. R.S. 22:1406(D)(1)(c) and further expanded the category of claimants prohibited from stacking UM coverage to include those injured while occupying automobiles owned by a "resident spouse, or resident relative" as well as the injured party. By so amending the statute, the legislature put resident family members in the same position as vehicle owners. William Shelby McKenzie and H. Alston Johnson, III, Insurance Law and Practice § 121-122, in 15 Louisiana Civil Law Treatise (2d ed. 1996).
Acts 1988, No. 203, § 1, also operated to strike the insured's right to select coverage under a UM policy not describing the involved vehicle when it is owned by the insured or a resident family member. Earlier that year, the supreme court ruled that a driver, injured in his own vehicle but insured under both his vehicle and his parents' vehicle's UM policies, was not limited to recovery under his own policy, but, rather, could select his parents' policy with higher limits. Wyatt v. Robin, 518 So.2d 494 (La.1988). In opposition to Wyatt, the legislature enacted La.R.S. 22:1406(D)(1)(e) which provides in pertinent part:
The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy.
Since that amendment, Louisiana courts have consistently interpreted La.R.S. 22:1406(D)(1)(e) to prohibit vehicle owners and their resident family members from collecting UM coverage under policies which do not describe family-owned vehicles involved in injury-causing accidents. See Taylor v. Sider, 97-1841 (La.App. 4 Cir. 4/29/98), 714 So.2d 783, writ denied, 98-1769 (La.10/9/98), 726 So.2d 406; Bamburg v. State Farm Mut. Auto. Ins. Co., 26,324 (La.App. 2 Cir. 12/7/94), 647 So.2d 447; Sandoz v. State Farm Mut. Auto. Ins. Co., 620 So.2d 441 (La.App. 3 Cir. 1993); and Primeaux v. State Farm Mut. Auto. Ins. Co., 624 So.2d 1294 (La.App. 3 *697 Cir.1993). The courts have reasoned that the legislative intent of Acts 1988, No. 203, § 1, was to prevent vehicle owners from enjoying the benefit of coverage on all household vehicles while paying for coverage on only one or two vehicles. Haltom v. State Farm Mut. Auto. Ins. Co., 588 So.2d 792 (La.App. 2 Cir.1991).
In sum, although the law of stacking was once dynamic, it is now well settled. In its current form, La.R.S. 22:1406(D)(1)(c) reads as follows:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
. . . .
(1)(c)(i) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities of recovery under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
In Nall v. State Farm Mutual Automobile Insurance Co., 406 So.2d 216, 218 (La. 1981), the supreme court interpreted La. R.S. 22:1406(D)(1)(c) to require that "an insured with insurance available to him under more than one U/M policy may not stack those policies" except when:
(1) the injured party is occupying an automobile not owned by him[, "resident spouse, or resident relative"][1];
(2) the U/M coverage on the vehicle in which the injured party was an occupant is primary; and
(3) should that primary U/M coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other U/M coverage available to him.
See also Boullt, 752 So.2d 739.
Despite the clarity of the law, the plaintiffs assert that the contract of insurance is controlling as between the parties and that National General, by the terms of its policy, has extended coverage to Quanita greater than that required by Louisiana law. We agree.
While the original National General policy contains a section relating to UM coverage, it has been replaced in full by an endorsement entitled "UNINSURED MOTORISTS COVERAGELOUISIANA." Subsection A of the section of the endorsement entitled "INSURING AGREEMENT" provides in pertinent part:
A. We will pay compensatory damages which an "insured" is legally entitled to *698 recover from the owner or operator or an "uninsured motor vehicle" because of "bodily injury":
1. Sustained by an "insured"; and
2. Caused by an accident.
Subsection B of that same section of the endorsement defines "insured" for UM coverage purposes as:
1. You or any "family member."
2. Any other person "occupying" "your covered auto."
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.
Additionally, subsection C(2) of that same section provides that the definition of "uninsured motor vehicle" includes a motor vehicle "[t]o which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for `bodily injury' under that bond or policy to an `insured' is not enough to pay the full amount the `insured' is legally entitled to recover as damages."
In a section of the endorsement entitled "OTHER INSURANCE," the following language appears:
If there is other applicable similar insurance available under more than one policy or provision of coverage:
A. With respect to "bodily injury" sustained by an "insured":
1. While "occupying" a vehicle owned by that person or while not "occupying" any vehicle, any recovery for damages sustained by an "insured" as a named insured or family member may equal but not exceed the highest applicable limit for any one vehicle under this insurance or any other insurance.
2. While "occupying" a vehicle not owned by that person, the following priorities of recovery will apply:
a. the Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident will be primary.
b. if the primary insurance is exhausted, any excess recovery for damages sustained by an "insured" as a named insured or family member may equal but not exceed the highest applicable limit for any one vehicle under this insurance or any other insurance. In no instance will more than one limit be available as excess insurance.
B. We will pay only share of loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
While this provision does not exactly track the language suggested in La.R.S. 22:1406(D)(1)(c), it provides the same result.
If the inquiry were to stop here, we would have no difficulty concluding that Quanita is not entitled to UM coverage under the National General policy. Although she is clearly a named insured under the National General policy as a "family member," she could not meet the first of the three requirements stated in Nall, in that she was occupying an automobile owned by her mother, a "resident relative." However, the plaintiffs suggest that Quanita is given coverage under subsection B(1) of the section of the endorsement entitled "EXCLUSIONS." Under that section, the following language appears:
A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by:

*699 1. An "insured" while "occupying," or when struck by any vehicle owned by that "insured" which is not insured for this coverage under this policy.
(Emphasis added).
The plaintiffs argue that for this exclusion to be applicable, the vehicle involved in the accident had to be owned by the insured claiming damages. They assert that, by using the pronoun "that" before "insured," the person excluded is one who is both an insured injured while occupying a non-described vehicle and the owner of that vehicle. Although Quanita was an "insured" under the UM provisions of the National General policy, she was not the owner of the insured vehicle. National General acknowledges the existence of the cited exclusion, but argues that it, together with La.R.S. 22:1406(D)(1)(c) and (e) and accompanying jurisprudence, clearly and unambiguously precludes Quanita's recovery under its policy.
We note that the policy of insurance is a standard contract provided by National General, and, therefore, any ambiguity as to its meaning is to be interpreted against the insurer as drafter of the contract. La.Civ.Code art.2056; See Mahaffey v. State Farm Mut. Auto. Ins. Co., 95-641 (La.App. 3 Cir. 2/28/96), 679 So.2d 129, writ denied, 96-1689 (La.10/11/96), 680 So.2d 650. Moreover, if a policy of insurance is susceptible to more than one reasonable meaning, the policy should be interpreted in favor of providing coverage. Newby v. Jefferson Parish Sch. Bd., 99-98 (La.App. 5 Cir. 6/1/99), 738 So.2d 93; Kiefer v. Southern Freightways, Inc., 95-2037, 95-2038 (La.App. 4 Cir. 12/27/96), 686 So.2d 1041, writ denied, 97-0255 (La.4/4/97), 692 So.2d 417; Armand v. Rhodes, 96-15 (La.App. 3 Cir. 12/11/96), 685 So.2d 546, writ denied, 97-0006 (La.3/21/97), 691 So.2d 81.
However, we find these rules of interpretation to be inapplicable to the matter before us, since we do not find the language of the policy to be ambiguous. In the instant case, Quanita was an insured as a family member of the named insured under the policy, but she was not the owner of the Nissan which she was "occupying" while injured. Thus, under the language of this policy, she cannot be excluded from coverage. Under the aforementioned statutes and jurisprudence alone, the plaintiffs would be prohibited from stacking. However, the policy of insurance, which we interpret to dictate a contrary conclusion, serves as the law between National General and the plaintiffs. La.Civ.Code art.1983; See Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024. Importantly, National General chose the language to include in its policy and cannot avoid the consequences of the words so chosen when applied. Had it desired to exclude Quanita from coverage, it could simply have substituted "any `insured'" for "that `insured'" in the aforementioned exclusion. Therefore, we find that the trial court erred as a matter of law in finding that Quanita Livas is excluded from coverage under the National General policy and granting summary judgment in favor of National General.

DISPOSITION
For the aforementioned reasons, we reverse the grant of summary judgment of the trial court insofar as it purports to dismiss the claim of Quanita K. Livas and remand the case to trial for further proceedings. All costs of appeal are assessed against National General Insurance Company.
REVERSED.
NOTES
[1] Added by Act 203 of 1988 amendment to La.R.S. 22:1406(D)(1)(c).