945 So.2d 785 (2006)
Shane GUIDRY & Guidry Brothers Development, LLC.
v.
LEE CONSULTING ENGINEERING INC., ABC Insurance Company, B & P Construction, Inc., Def Insurance Company, New Orleans Post Tension, Inc., GHI Insurance Company, Design Built Consulting, Inc., and JKL Insurance Company.
No. 06-CA-279.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2006.
*787 Thomas J. Capella, Attorney at Law, Metairie, Louisiana, Robert A. Vosbein, Jr., Benjamin C. Rodgers, Attorneys at Law, New Orleans, Louisiana, for Plaintiff/Appellant.
Matthew K. Brown, Attorney at Law, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
This is an appeal from a summary judgment rendered by the trial court on the issue of insurance coverage. For the reasons stated herein, we affirm.
Plaintiffs, Shane Guidry and Guidry Brothers Development, L.L.C., filed the instant petition for damages against numerous defendants, including Lee Consulting Engineers, Inc. and its insurer, Certain Underwriters at Lloyds. In this petition, plaintiffs allege that Shane Guidry contracted with Guidry Brothers Development, LLC ("GBD") to build a home on property owned by Mr. Guidry in Harvey, Louisiana. According to the petition, GBD then contracted with Design Built Consulting, Inc. to design and provide necessary documents and drawings for the home. Design Built in turn hired Lee Consulting Engineers, Inc. ("Lee") to perform engineering services and structural analysis, and to make recommendations for the design and construction of the foundation of Mr. Guidry's home.
Following the completion of his home construction, Mr. Guidry noticed cracks in the sheetrock which he later discovered were caused by settlement of the home. A subsequent professional investigation of the foundation and sub-soils beneath the home confirmed this fact. As a result of this discovery, plaintiffs filed the present lawsuit alleging, among other things, that the negligence of Lee in its design of the foundation caused him to incur these damages.
Lee filed an answer to the petition generally denying these allegations. Lee's insurer, Certain Underwriters at Lloyds ("Underwriters"), filed a separate answer denying the allegations of the petition and further averring that the policy issued to Lee was not in effect at the time of the alleged errors or omissions referred to in plaintiffs' petition. The insurer subsequently brought a motion for summary judgment on the basis that the policy issued to Lee provided no coverage to plaintiffs herein. Thereafter, plaintiffs brought a cross-motion for summary judgment on the basis that the policy issued to Lee provided coverage for the damages they sustained in this case.
Following a hearing, the trial court granted the motion of Underwriters and denied the motion of Shane Guidry and GBD. In its reasons for judgment, the court stated as follows:
On August 16, 2005, this Court granted Underwriters' Motion for Summary Judgment and denied the plaintiffs' Cross Motion for Summary Judgment finding that coverage under Policy NAC1017 issued by Underwriters to plaintiffs [sic] did not exist at the time the wrongful acts allegedly occurred. "A `claims made' insurance policy is one in which coverage attaches only if the negligent harm is discovered and reported with the policy period." Ward v. Vizzini, 695 So.2d 1012, 1015 (La.App. 5th Cir.1997). Here, plaintiff discovered the alleged settlement in 2001; however, the coverage under Policy NAC1017 did not commence until February 1, 2002.
The Court finds that the plaintiffs' damage manifested itself prior to the *788 retroactive date of Underwriters' policy; therefore, the defendant insurers, Certain Interested Underwriters at Lloyd's of London, are not liable for the plaintiffs' damages. For this reason the Court grants the defendant's Motion for Summary Judgment and denied the plaintiffs' Cross Motion for Summary Judgment.
Applicable Law
Summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions and affidavits on file, demonstrate that no genuine issue as to any material fact is present and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B; Araujo v. Eitmann, 99-1377 (La.App. 5th Cir.5/17/00), 762 So.2d 223, 225. The standard of review of the granting of a motion for summary judgment is de novo, using the same criteria that governs trial court's determination of whether summary judgment is appropriate. Independent Fire Insurance Co. v. Sunbeam, 755 So.2d 226 (La.2000); Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991).
Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Props., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183; Vintage Contracting, L.L.C. v. Dixie Bldg. Material Co., Inc., 03-422 (La.App. 5 Cir. 9/16/03), 858 So.2d 22, 25.
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation set forth in the Louisiana Civil Code. Reynolds, 634 So.2d at 1183. In Louisiana, insurance policies are interpreted under the rules governing contract interpretation. La. C.C. arts.2045-2057. Language in an insurance policy which is clear, expresses the intent of the parties and does not violate a statute or public policy, must be enforced as written. If the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. Reynolds, supra; Newby v. Jefferson Parish Sch. Bd., 99-0098 (La.App. 5th Cir.6/1/99), 738 So.2d 93; Araujo v. Eitmann, 762 So.2d at 225.
The purpose of liability insurance is to afford the insured protection from damage claims. Reynolds, supra. Insurance policies should be interpreted to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148, 151 (La.1993). Any ambiguity in an insurance policy's exclusion should be narrowly construed to afford coverage. Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024, 1029. However it is also well-settled that unless a statute or public policy dictates otherwise, insurers have the right to limit liability and enforce conditions or limitations upon their insureds. Reynolds, 634 So.2d at 1183.
Discussion
In support of its motion for summary judgment, Underwriters submitted an affidavit of Rolf Heilgeist, claims manager for Underwriters who stated that in 2002, Lee Consulting Engineers, Inc. purchased professional liability insurance from Underwriters which was assigned policy number NAC1017. Mr. Heilgeist stated that a true, correct and authentic copy of the insurance policy was attached to the affidavit and that the policy identifies a retroactive date of February 1, 2002 and a coverage *789 period of Februrary 1, 2002 through February 1, 2003.
Attached to this affidavit is a document entitled "Evidence of Insurance," which appears to be a declarations sheet containing the above information regarding the subject policy, including the retroactive date and the coverage period. A copy of the policy provisions was also attached to the affidavit. The retroactive date in the policy is defined as "the date as specified in the Schedule, on or after which any Wrongful Act must have occurred in order for Claims first made arising therefrom to be considered for coverage. Claims first made arising from any Wrongful Act prior to this date are not covered by this Evidence of Insurance."
Underwriters also attached an endorsement to the policy which was effective on February 1, 2002 and amended the provisions of the coverage provisions of the policy.
In opposition to the insurer's motion and in support of their cross-motion, plaintiffs argue that when the subject insurance policy was purchased, Mr. Lee was told that it was a claims-made policy that would cover all professional liability claims asserted during the coverage period. Plaintiffs claim that Mr. Lee was not told that a wrongful act giving rise to any claim must also take place during the policy period or subsequent to the retroactive date to recover under the policy. Rather, plaintiffs contend that Mr. Lee applied for and was sold a policy which would provide coverage for all claims made during the coverage period regardless of when the wrongful act occurred. Plaintiffs submitted the affidavit of Mr. Lee to support these facts. Plaintiffs further argue that the terms of the actual policy supports Lee's interpretation, and to the extent coverage is not granted for the present claim, the terms of the policy are ambiguous and should be interpreted to afford coverage in this case.
Plaintiffs assert several arguments in favor of granting of insurance coverage in this case. First, plaintiffs contend that the documentation attached to Underwriters' motion for summary judgment is not evidence of the actual policy issued by the insurer in this case. However, the record indicates that Underwriters submitted an affidavit of its claims manager who stated that the documentation produced represents a true and correct copy of the actual policy which is kept in Underwriters' records. We find no basis to hold that the copy of the policy in the record before us does not represent the true and correct terms of the policy provisions.
A review of those policy provisions indicates that the policy expressly requires the wrongful act to be committed and the claim to be reported during the coverage period for coverage to attach. Section I, Part B of the policy provides:
This insurance applies to Wrongful Acts, which are committed or alleged to have been committed anywhere in the world, provided that such Wrongful Acts:
1. were committed during the Coverage Period and Claim is first made against the Insured and reported to the Underwriters via the Correspondent during the Coverage Period or within 60 days after the end of the Coverage Period or during any Optional Extension Period, if purchased, or
2. which although committed prior to the Coverage Period and subsequent to the Retroactive Period, results in a Claim being first made against the Insured and reported to Underwriters via the Correspondent during the Coverage Period or within 60 days after the end of the Coverage *790 Period or during any Optional Extension Period, if purchased, provided that the insured, prior to the effective date of the Coverage Period, did not know or could not have reasonably foreseen, that such Wrongful Acts might give rise to a Claim.
Although plaintiffs contend in their second argument that the endorsement to the policy changes the above-cited terms, we find no support for such an argument. A review of the endorsement indicates that it amends Section I, Part A, pertaining to coverage. A comparison of the endorsement with the terms of the policy indicates that the endorsement only made changes with regard to the provisions regarding reimbursement for costs of defense contained in Part A of the policy.[1] Further, the endorsement does not refer to Part B of Section I, and the endorsement further includes the provision that "all other terms and conditions remain unchanged." After review of the record, we find that the only difference between the policy provisions and the language of endorsement is the addition of Paragraph 2 of section A regarding reimbursement for defense costs, an issue which is not disputed in the present case.
Under the circumstances presented here, we fail to find merit in plaintiffs' argument that the language of the endorsement supersedes all of the provisions of the policy. Rather, a review of the endorsement language indicates it amends Part A with regard to coverage, and those terms as amended are not pertinent to this appeal. We find both the provisions of the policy and the language of the endorsement to be clear and unequivocal, and we find no support in plaintiffs' argument that the endorsement changes the terms of the policy which requires wrongful acts to be committed and claims to be filed during the coverage period.
Lastly, plaintiffs argue that the policy purchased was represented by Underwriters to be a claims-made policy without regard to the application of a retroactive date and that the substantial premium *791 paid by Lee supported this fact. Plaintiffs contend that under Underwriters' interpretation of the policy, there can never be coverage under the policy based on the nature of the engineering work involved. For this reason, plaintiffs contend that the policy provisions as interpreted by Underwriters are against public policy.
However, language in an insurance policy which is clear, expresses the intent of the parties and does not violate a statute or public policy, must be enforced as written. Further, insurers have the right to limit liability and enforce conditions or limitations upon their insureds. Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible. Livingston Parish School Bd. v. Fireman's Fund Am. Ins. Co., 282 So.2d 478, 481 (La.1973).
In the present case, the language of the policy is clear and unambiguous. According to express policy terms, the insured is covered if the wrongful act occurs during the policy period and the claim is made during that period. The language is unequivocal and there is no necessity for further interpretation. Furthermore, the language is not, per se, against public policy, nor do we find any public policy violation in our interpretation of the policy language. See Reichert v. Bertucci, 94-1445 (La.App. 4 Cir. 1/31/95), 650 So.2d 821, 823.
We likewise find no merit in plaintiffs' argument that Mr. Lee was not informed of the retroactive date when he applied for the subject insurance policy. In the present case, Mr. Lee submitted an application for a claims-made policy in January of 2002. The application was signed by him on January 25, 2002. Immediately above his signature on the application, there appears a notice to the applicant which provides as follows:
I understand and accept that the policy applied for provides coverage on a "claims-made" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AND REPORTED TO THE UNDERWRITERS DURING THE POLICY PERIOD FOR ACTS THAT OCCUR AFTER THE POLICY'S RETROACTIVE DATE AND PRIOR TO THE EXPIRATION DATE OF THE POLICY.
(Emphasis in original.)
Although the insurance application does not represent a binding contract of insurance, it certainly evidences Mr. Lee's understanding of the policy terms at the time he applied for the policy. The declarations page of the policy also clearly indicates that the retroactive date of the policy was the same date as the first date of the coverage period, February 1, 2002. Under these circumstances, we fail to find that Mr. Lee was misled as to the terms in the purchase of this policy.
Conclusion
Accordingly, for the reasons assigned here, we find that the trial court ruling granting summary judgment to Certain Underwriters of Lloyds on the issue of coverage under the subject policy is correct and Underwriters is entitled to a judgment as a matter of law. We therefore affirm the trial court's judgment. Plaintiffs shall bear all costs of this appeal.
AFFIRMED.
NOTES
[1] The endorsement provides as follows:

In consideration of the premium charged, section I. Insurance Provided, is amended to read as follows:
A. CoverageProfessional Liability and Claims-Made Clause
1) Subject to the terms of the Policy, Underwriters agree to pay on behalf of the Insured all sums, in excess of the deductible, which the Insured shall become legally obligated to pay as Loss (including Claim Expenses) as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE COVERAGE PERIOD and reported to the Correspondent within 60 days after the end of the Coverage Period arising out of any Wrongful Act.
2) Underwriters shall reimburse the Insured up to $10,000 per Coverage Period for Claim Expenses resulting from the defense of a proceeding before a state licensing board or governmental regulatory body incurred as the result of a notice of a proceeding first received by the Insured during the Coverage Period. It does not apply to any monetary awards of any kind, judgments, fines or settlements relating to, or directly or indirectly resulting from the institution of disciplinary proceedings. Underwriters shall not be required to provide any coverage to appeal any adverse ruling or judgement by such board or regulatory body. The deductible shall not apply to this coverage A(2). However, any payments made by Underwriters under this clause A(2) shall be included within the applicable limits of liability and not in addition to.
Underwriters will defend any claim or suit against the Insured seeking such amounts. Underwriter's obligation to pay for Claim Expenses is limited as described under DEFENSE AND SETTLEMENTS.
ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.