FREDERICKA HOMBERG WICKER, Judge.
|3BG Real Estate appeals the trial court’s ruling finding that its claims for replacement costs were excluded under the commercial general liability policy. For the reasons that follow, we affirm.
Factual and Procedural Background
On April 2, 1999, Grand Point Industries (“Grand Point”) submitted a written bid to MBA Services, Inc., proposing two options for the replacement of a roof on 800 Commerce East, Harahan, Louisiana (the “East Building”). MBA Services, Inc. was the agent for Elmwood Corporate Park Limited Partnership (ECP) — the owner of the East Building. MBA Services selected Option Two — a Rhino, top coat, 20 year warranty at a cost of $49,507.50. On April 8, 1999, Grand Point procured commercial *287 general liability insurance from Scottsdale Insurance Company (“Scottsdale”). The policy became effective on January 18, 1999, and terminated one year thereafter.[1]
|4Baha Towers, III[2] and Grand Point confected a contract for the replacement of the roof on the East Building on April 28, 1999. Article I — “SCOPE OF CONTRACT” — provided, in pertinent part:
... Material and workmanship is warrantied [sic] for 20 years by contractor [Grand Point] and manufacturer. Contractor agrees to provide all repairs necessary in case of a water leak from roof and/or gutters as part of the 20 year material and workmanship warranty.
In addition, the “WARRANTY” section under Article V(A) provided, “contractor guarantees and warrants his material and workmanship for a period of 20 years from the date of substantial completion of the work.”
Baha Towers executed a second contract on July 5, 1999, for the replacement of the roof on 800 Commerce West, Harahan, Louisiana (the “West Building”) — also owned by ECP. The second contract contained the identical provisions stated above. On January 18, 2000, Scottsdale and Summit Consulting, Inc. issued a certificate of liability insurance to Grand Point for commercial general liability insurance. The policy became effective on April 18, 2000, and terminated one year thereafter.
Rhino Systems of Canada, Inc. issued a separate warranty to Bahar Development, Inc. — Baha Tower’s parent company — in connection with the West Building.[3] The warranty listed MBA Services as the contractor and provided a warranty period of 20 years, commencing on August 1, 1999— the date on which the installation of the roof at the West Building was completed. BG Real Estate alleges that within a year of installation, the roof membrane of both the East and West Buildings began to fail, allowing water to enter the buildings.
| sOn July 6, 2001, the plaintiffs/appellants, BG Real Estate and HAOBIGP, LLC — the general partners for ECP— filed a petition for damages against the defendants/appellees, Rhino Systems of Canada, Inc., Grand Point, Scottsdale, and Summit Consulting, Inc. for damages sustained due to the failure of the roof on the West Building.[4] BG Real Estate then filed a similar, separate suit on March 15, 2002, against Rhino Systems of Texas, Grand Point, and Scottsdale, for damages sustained due to the failure of the roof on the East Building. The actions were consolidated on March 5, 2004.
Scottsdale moved for summary judgment on June 2, 2004, arguing that there were no genuine issues of material fact because the policy issued to Grand Point did not provide coverage for BG Real Estate’s claims. The trial court denied the motion on March 30, 2005. In its written reasons denying the motion, the trial court found that no exclusions existed in the policy for the consequential damages alleged, finding that those damages appeared to be covered under the warranty *288 section. The court further found that there was a factual dispute regarding whether a subcontractor was involved.
On August 11, 2006, BG Real Estate, Scottsdale, and Grand Point jointly moved to dismiss Grand Point from the litigation, while BG Real Estate preserved its right to proceed against Scottsdale.[5] The trial court granted the motion on August 14, 2006; and around that same time, BG Real Estate settled its claims for the consequential damages. Trial regarding the replacement costs was scheduled to commence on November 17, 2009. The parties, however, jointly submitted the case to the trial court. The trial court found Supreme Services Specialty Co.[6] ^controlling and ruled in Scottsdale’s favor, rendering its judgment on October 5, 2010. BG Real Estate timely moved for a new trial. After a hearing, that motion was denied. BG Real Estate moved for a devolutive appeal from the October 5th judgment. Discussion
An insurance policy is a contract, which must be construed employing the general rules of interpretation of contracts. Supreme Services, supra, at 638 (citations omitted). If the insurance policy’s language clearly expresses the parties’ intent and does not violate a statute or public policy, the policy must be enforced as written. Id. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. Id. citing Reynolds v. Select, 93-1480 (La.4/11/94), 634 So.2d 1180; Newby v. Jefferson Parish Sch. Bd., 99-98 (La.App. 5 Cir.6/1/99), 738 So.2d 93.
Liability insurance policies should be interpreted to effect, rather than to deny coverage. Supreme Services, supra, at 638. It is well-settled, however, that unless a statute or public policy dictates otherwise, “the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds.” Id. at 638-9. In these circumstances, unambiguous provisions limiting liability must be given effect. Id. (citations omitted). Thus, an insurer bears the burden of proving that a loss falls within a policy exclusion. Id. see also Blackburn v. National Union Fire Ins. Co., 00-2668 (La.4/3/01), 784 So.2d 637, 641.

Assignments of Error

BG Real Estate presents two assignments of error for review. Due to the interrelatedness of the issues presented, the two will be discussed in tandem. BG l7Real Estate contends that the trial court erred in finding that the Rhino warranties were excluded under the Scottsdale policy and further erred by misapplying Supreme Services.
BG Real Estate seeks replacement costs in the amount of $78,730.00 and $70,000.00 for replacement of the roofs on the West and East Buildings, respectively. It contends that its claims for replacement costs are covered, arguing that “warranties are part of the contractor’s work, and that the contractors [sic] work is excluded from coverage unless that work is supplied by a subcontractor. As the Rhino companies are subcontractors their warranties must be covered under the exclusions to section L.”
In this case, the three relevant exclusions in the CGL policy under which Scottsdale could deny coverage are exclusions (j)(5), (j)(6) and exclusion (l). Those exclusions provide:
*289 2. Exclusions
This insurance does not apply to ...
(j)(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the “property damage” arises out of those operations; or
<j)(6) That particular part of any property that must be restored, repaired or replaced because “your work” was incorrectly performed on it.
Paragraph (6) of this exclusion does not apply to “property damage” included in the “products-completed operations hazard.”
(Z). Damage to Your Work
“Property damage” to “your work” arising out of it or any part of it and included in the “products-completed operations hazard.”
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
^Consistent jurisprudence interpreting commercial general liability policies hold that “these exceptions unambiguously exclude coverage for damage to the work or product itself or for repair or replacement of the insured’s defective work or product.” McMath Constr. Co., Inc. v. Dupuy, 03-1413, p. 7 (La.App. 1 Cir. 11/17/04), 897 So.2d 677, 682. A CGL policy is not intended as a guarantee of the quality of the insured’s products or work.[7] The work-product exclusions reflect the “possibility that coverage under a CGL policy will be used to repair and replace the insured’s defective products and faulty workmanship.” Id. at 555.
Professors McKenzie and Johnson explained these exclusions as follows:
[exclusion (j)(5) applies while work is in progress and is discussed in Section 195, supra. The important relationship between Exclusion (j)(6) and exclusion (l) should be noted — that is, exclusion (j)(6) does not apply to property damage in the “products-completed operations hazard” and exclusion (Z) applies only to property within that hazard. Thus, exclusion (j)(6) is applicable before the work is complete ... and exclusion (Z) is applicable after the work is complete. Exclusion (j)(6) is broader than exclusion (Z). Exclusion (j)(6) applies to any property that must be restored, repaired or replaced because the insured’s work was incorrectly performed. On the other hand, exclusion (Z) applies only to “your work” and does not apply to work performed on behalf of the insured by subcontractors. Id.
Thus, under exclusion (j)(5), Scottsdale is not obligated to pay for any damages for which Grant Point or any of its subcontractors performed operations if the “property damage” arose from those operations. Exclusion (j)(5), however, applies while the work is in progress and is therefore inapplicable in this case because BG Real Estate contends the damage arose after the roof installation was complete.
Under exclusion (j)(6), Scottsdale is not obligated to pay for any damages to any part of the property that must be restored, repaired, or replaced because “your work” was incorrectly performed on it. BG Real Estate’s petition alleges that Grand Point improperly installed the roofs. Thus, coverage appears to be excluded |9under exclusion (j)(6) because BG Real Estate seeks the replacement costs of the roofs. *290 An exception to this exclusion, however, states that this exclusion does not apply to property damage included in the products completed operations hazard (PCOH).
The Scottsdale policy defines the PCOH as including, “all ‘bodily injury’ and ‘property damage’ occurring away from premises you own or rent and arising out of ‘your product’ or ‘your work’ except....” BG Real Estate contends that under Supreme Services, its claims are included in the PCOH. In Supreme Services, the Louisiana Supreme Court explained that the PCOH applies when damage arises out of defective work and when the damage causes injury to a third party. Id. at 645. BG Real Estate argues that based on this dual inquiry, its claims are covered because of the damages it suffered due to the failed warranties.
BG Real Estate must satisfy both prongs of the Supreme Services test in order for its claims to be included in the PCOH. BG seeks to recover $70,000.00 and $78,730.00 — the amounts it spent replace the roofs on the East and West Buildings, respectively. It argues that the failed warranties are the issue because if the warranties had survived, it would not have had to spend $148,730.00 to replace the roofs. This argument is not compelling. Regardless of how BG Real Estate frames the issue, this case involves a claim for damages to the work-product itself— the failed roofs — and not a claim for damages arising out of the work. The claims for damages arising out of the work, i.e. the consequential damages, were settled before the case proceeded to trial. Thus, BG Real Estate’s claims for the replacement costs are not included in the PCOH. Furthermore, exclusion (j)(5) only applies while the work is in progress. And here, the damage arose after completion.
ImThe only remaining exclusion under which Scottsdale could deny coverage is the “work-product” exclusion — exclusion (l). This exclusion applies to work performed by Grand Point. The “work” in this case includes all work associated with installing the roof. The Scottsdale policy makes it clear that damage to the product itself is excluded from coverage. BG Real Estate relies on the exception to the exclusion which provides coverage for work performed by a subcontractor.
We have thoroughly reviewed the record and are unable to find any evidence that suggests that Rhino Systems was Grand Point’s subcontractor. Therefore, the exception to exclusion (l) is inapplicable.
Conclusion
For the reasons discussed, we find that BG Real Estate’s claims for replacement costs of the roofs are excluded under the Scottsdale policy. The damage arose after the work was completed and therefore triggers the “work-product” exclusion. This exclusion excludes damage to work performed by Grand Point. Accordingly, the judgment is affirmed.

AFFIRMED

. Baha Towers was ECP’s management company when the contract was executed.

. A copy of the warranty for the East Building is not included in the record.

.It was later determined that Summit Consulting, Inc. did not provide any liability insurance to Grand Point. Therefore, it was dismissed from the litigation, without prejudice, on September 7, 2001.

. Neither Grand Point nor Rhino Systems are currently in business. Therefore, the case proceeded solely against Scottsdale.

. 06-1827 (La.5/22/07), 958 So.2d 634.

. William McKenzie & H. Alson Johnson, Louisiana Civil Law Treatise: Insurance and Practice Law § 198 p. 555 (3d ed.2006).