COX, J.
11 Defendant, Safeway Insurance Company of Louisiana (“Safeway”), appeals from a judgment for the plaintiffs, Letitia Green, et al. (“Green”), finding that Safeway waived its affirmative defense of material misrepresentation and awarding money damages based on the stipulated liability of defendant Larry Brown (“Brown”) for an automobile accident. The trial court found that Safeway had waived the defense of material misrepresentation due to multiple renewals of the insurance policy occurring after the accident and after the alleged material misrepresentation became known. Based on this narrow set of facts and for the following reasons, we affirm.

Fads

On June .8, 2012, at approximately 6:28 p.m., a two-car accident occurred at the intersection of-8400 St. Vincent and West 84th Street in Shreveport. Brown was the operator of one of the vehicles, a 1998 Buick Park Avenue. The other car, a 2006 Pontiac Grand Prix, was operated by Green and contained the other plaintiffs. Green filed suit against Brown and Safeway Insurance Company-.of Louisiana on June 7, 2013, claiming damages for personal injuries. In its answer to the petition, filed on August 6, 2013, Safeway asserted the affirmative defense of material misrepresentation, arguing that the insurance policy was void ab initio based on misrepresentations and nondisclosures in the insurance application. On November 10, 2015, a bench trial was held at the First Judicial District Court for Caddo Parish.
*720 |2At the outset of the trial, the parties entered a stipulation that Brown was at fault for the accident and liable for the plaintiffs’ injuries. The only question to be addressed at trial was whether the Safeway policy provided coverage. The entire record was admitted into evidence without objection at the outset of the trial.
At trial, Brown testified that the 1998 Buick he was driving was actually registered to Harvey E. Richardson (“Richardson”) and insured in his name through a policy issued by Safeway. Brown paid the purchase price for the vehicle on approximately March 9, 2012, and then picked up Richardson to get insurance and title the vehicle. Richardson, as a favor to Brown and in exchange for a payment of $50.00, agreed to register and insure the 1998 Buick in his name. Richardson testified that he knew that Brown did not have a driver’s license and that was why he could not insure and register the car himself.
Both Brown and Richardson testified that Brown paid all of the premium bills for the Safeway policy. In fact, Richardson testified that he had the mailing address on the policy changed to Brown’s address on July 9, 2012,[1] so that all the bills would go to him for payment. Richardson also testified that he never paid for any portion of the car nor did he drive it. Brown was never added to the policy, and Richardson never garaged or kept the car at his residence. Brown and Richardson planned to keep the vehicle registered and insured by Richardson until Brown got his driver’s license, and then they would register the vehicle in Brown’s name or his girlfriend’s |sname.[2] Richardson testified that Brown was not listed as a driver of the 1998 Buick in the Safeway policy, nor was it disclosed that he paid the purchase price of the vehicle.
Richardson testified that after the accident he told a Safeway representative that the car was not garaged at his address. He was not sure if that was documented. Rhonda Marshall (“Marshall”), a Safeway underwriting supervisor, testified that had Brown been listed on the application, Safeway would have required him to be listed as an “excluded person,” or the policy would not have been issued if the ownership of the vehicle was in question. Marshall also testified that if a material misrepresentation was discovered, it was Safeway’s policy to cancel or non-renew the insurance policy. Safeway did actually flag the policy for nonrenewal on February 18, 2014,[3] but the policy was canceled by Richardson before the renewal date. Marshall testified that the policy was not null, nor was it canceled by Safeway; rather there was a policy that covered Richardson as a driver, but not Brown.
Gail Richard (“Richard”), a Safeway claims adjuster, testified that it was her responsibility to report any material misrepresentations she discovered in the course of investigating a claim by sending a task to the underwriting department, but she had not done so in this case because she was still in training at the time and did not know of the responsibility. She testified that she was assigned the claim submitted by Green on June 12, 2012. Shortly thereafter, she discovered Brown was an unlisted driver on 4the policy. She then contacted Richardson who clarified that Brown drove the vehicle, garaged it, and made the insurance payments.
*721 On September 10, 2012, Safeway issued a letter to Brown denying coverage for the accident based on the statements made by Richardson. The letter clarified that Safeway would not cover the accident because the vehicle was purchased for Brown and garaged with him. It further stated, “Had we known that you were the primary operator of this vehicle, we would not have accepted the application.”
Although the claim was denied per the letter, Richard’s supervisors did not void the insurance policy in Richardson’s name. Richard testified that she did not know if her supervisors ever notified the underwriting department of the material misrepresentation. Following the accident and denial of coverage letter dated September 10, 2012, Safeway continued to renew and accept premiums on the policy through approximately February 10, 2014. The policy was canceled by the insured after the vehicle broke down and was no longer drivable.
The documents in this case reveal important differences between the language used in the insurance application and in the actual insurance policy. Specifically, Section 5 of the insurance application filled out by Richardson included the following language:
It is a special condition of this policy that the policy shall be NULL and VOID and of no benefit or effect whatsoever as to any claim arising thereunder in the event that there are any material misrepresentations made with an intent to deceive in this application. (Emphasis added).
|sThe insurance application also requires that potential drivers of the vehicle be listed in order to calculate premiums. Richardson listed only himself on the application. In reference to this list, the insurance application provides:
Applicant warrants there are no other persons, age 15 or older, living with applicant, including applicant’s children who attend college, other than those listed below. Applicant warrants that the vehicle(s) listed on this application are primarily driven by the drivers listed under this policy.
Aside from this declaration, the insurance application asks for an address and states that all vehicles listed on the application “must be garaged at the address on the policy.” Richardson testified that he had no intent for the vehicle to be garaged at his address, nor was the vehicle ever kept there after the commencement of the policy.
In contrast with the “null and void” language found in the application for insurance, Paragraph 16 of the Safeway insurance policy, entitled “Misrepresentation,” states,
This policy shall be voidable, at our option, if the named insured or any other insured has, with an intent to deceive, concealed or misrepresented any material fact concerning any matter regarding completion of the application. (Emphasis added).
On November 12, 2015, the trial court issued a ruling in favor of the plaintiffs on the basis of the stipulated liability and a finding that Safeway waived the right not to provide coverage for the accident. In reaching this conclusion regarding waiver, the court specifically noted that Safeway renewed the policy at least three times after the accident and misrepresentation had become known. On February 24, 2016, a judgment for the plaintiffs was signed in accordance with the oral reasons for judgment. Safeway timely filed a suspensive appeal from that judgment.
| JjCLW
The issue to be determined in this case is whether the doctrine of waiver may be *722 applied to gateway's affirmative defense of material misrepresentation when Safeway took actions inconsistent with the asserted defense.
Waiver has been described by this court as the intentional relinquishment of a known right, power or privilege, which occurs when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Tate v. Charles Aguillard Ins. & Real Estate, Inc., 508 So.2d 1371 (La. 1987); Maddox v. Keen, 33,072 (La.App. 2 Cir. 4/7/00), 756 So.2d 1279; 1 William S. McKenzie & H. Alston Johnson, III, Insurance Law and Practice § 5, in 15 La. Civil Law Treatise (4th ed. 2016).
The Louisiana Supreme Court addressed the limits of waiver in Tate, supra, where an insured claimed that the insurer had tacitly waived a condition precedent to the policy by retaining an initial premium after it was certain that the condition precedent had failed. After examining the case law applying the doctrine of waiver, the court concluded:
Waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered. Of course, reliable proof of such knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations, generally falls on the party who demands performance.
Tate, supra. This standard was applied to the facts adduced at trial, and the court found that the insured had failed to carry the burden of proving waiver. Rather, the evidence made clear that the failure- to return the premium and inform the insured of the voided policy was the result of a broker’s conduct, and not an action undertaken by the insurer. As a result, the court found that the insurer had not tacitly waived the condition precedent.

Analysis

After reviewing the evidence, we agree with the trial court that the facts peculiar to this case demonstrate a waiver of the affirmative defense of material misrepresentation. The evidence demonstrates that Safeway became aware of'the misrepresentation and, by mistake or otherwise, did not exercise its option to void the insurance policy, thereby waiving the defense.
As an initial matter, the specific provisions of the insurance agreement must be examined for language pertaining to material misrepresentations. The only language included in the insurance policy pertaining to material misrepresentations is the above-described Paragraph 16, which allows Safeway to void a policy because of a material misrepresentation at its discretion. Although Safeway now asserts that the policy is void ab initio because of a material misrepresentation, the policy itself states otherwise. In addition, Safeway refers to the insurance application documents for the proposition that the policy is null and void in the case of a material misrepresentation. However, the application documents do not merge into the actual insurance policy that constitutes the contract governing this case. The application documents are merely a contractual offer. As such, the terms that they specify are not determinative of the outcome of this case.
LEven if the terms of the application are considered, such language is clearly at odds with the language of the policy itself. The application attempts to render any contract “null and void,” while the *723 policy creates an option to void the contract. It is well settled that ambiguities in insurance contracts are to be construed against the insurer and in favor of coverage. See Johnson v. Orleans Parish Sch. Bd., 2012-0190 (La. 5/31/12), 90 So.3d 386; Hudson v. Jager Bomb LLC, 47,501 (La. App. 2 Cir. 11/14/12), 107 So.3d 712. As a result, the contract must be construed as containing an option to void upon a demonstrated material misrepresentation.
Once it has been determined that the contract contains an option to void the contract upon discovery of a material misrepresentation, we must determine whether the record contains facts sufficient to support a finding that Safeway waived its option to void the contract and deny coverage. At trial, Marshall, a Safeway underwriting supervisor, testified that it was Safeway’s policy to cancel or non-renew policies in which material misrepresentations were discovered, effectively exercising the option contained in the contract. However, the testimony of Richard, a Safeway claims adjuster, indicates that in this case, after an alleged material misrepresentation was discovered, Safeway did not exercise its option. Although Safeway issued a letter denying coverage for the accident, Safeway continued to accept premiums and renewed the policy at least three times after the accident. Safeway produced no testimony to explain why the policy was not cancelled, but instead relied on the assertion that the renewals were mistakenly allowed.
|9The testimony of Safeway’s representatives clearly indicates that Safeway had knowledge of the alleged material misrepresentation and, therefore, knew that it had the option of seeking to void the insurance contract. The subsequent renewals of the insurance policy despite the knowledge that the car was being driven, garaged, and primarily kept by an individual other than the listed insured driver represents conduct that is manifestly inconsistent with any claim that Safeway wished to void the policy based on a material misrepresentation. Certainly this conduct represents an instance where the insurer has “knowingly and voluntarily elect[ed] to relinquish his right, power or privilege to avoid liability,” even though it brings within coverage risks that were originally excluded. Tate, supra.
Safeway also argues that La. R.S. 22:1266E (2) precludes a finding of waiver based on the renewal of the insurance policy. La. R.S. 22:1266E (2) states, “Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal.” The language of the statute makes clear that it was directed to situations quite different than addressed in this case. The statute specifically allows for an insurance policy to be cancelled for reasons existing before a policy is renewed. It does not, however, provide that such a cancellation has a retroactive effect of cancelling prior coverage. If the insurance policy in question were still in place today, the insured would have no argument that the renewals constituted a waiver of Safeway’s right to cancel the insurance contract today. However, the effect of the renewals as to coverage in the past would still be the same. Safeway’s conduct | mmanifested an intent not to void the policy, and, in fact, Safeway never actually did cancel or void the policy. As such, the renewals constituted a waiver of the defense of material misrepresentation as to issues of coverage.
In this case, the language of Safeway’s insurance policy and application is at best conflicting and cannot be found to create anything more than an option to void the contract upon finding a material misrepresentation. Safeway’s course of conduct of accepting premiums and renewing the insurance policy after admitted knowledge of *724 the alleged misrepresentation demonstrates conduct that is entirely inconsistent with an intent to void the policy and coverage. Although this court does not condone the type of fraud perpetrated by Brown and Richardson, Safeway was entirely aware that an unlicensed driver garaged and drove the car on a regular basis, and it continued to renew the policy after the accident. Accordingly, we agree with the finding by the trial court that Safeway waived its defense of material misrepresentation.

Conclusion

For the foregoing reasons, the trial court’s judgment and finding that Safeway waived its defense of material misrepresentation is affirmed. Costs of this appeal are assessed to the defendant, Safeway Insurance Company of Louisiana.
AFFIRMED.

. This address change occurred approximately 1 month after the subject accident.

. Testimony also established that Brown’s girlfriend did not have a driver’s license.

.Safeway’s underwriting department was, according to Marshall, made aware of the misrepresentation in the policy on February 12, 2014.