LEBLANC, J. hln the instant appeal, defendant-appellant, State Farm Automobile Insurance Company (“State Farm”) seeks review of the trial court’s judgment in favor of plaintiff-appellee, Brandon Forvendel. For the foregoing reasons, we find that the trial court did not manifestly err in finding that Mr. Forvendel could recover under both his own and his mother’s uninsured motorist insurance policies. Accordingly, the judgment of the trial court is affirmed. Factual & Procedural History On July 19, 2013, Mr. Forvendel was involved in a three-car accident while driving a vehicle he owned and which was insured by State Farm. Mr. Forvendel’s State Farm automobile insurance policy included uninsured motorist (“UM”) coverage. Following the July 2013 accident, State Farm allowed Mr. Forvendel to recover the policy limits of his UM policy. However, Mr. Forvendel, who lived with his mother, Deborah Forvendel, at the tíme of the accident, also sought to recover under her State Farm UM policy, which carried significantly higher policy limits. State Farm refused to allow him to recover under his mother’s policy. Mr. Forven-del subsequently filed suit against State Farm. In his Petition, Mr. Forvendel argued that he is entitled to recover UM benefits pursuant to his mother’s policy because of State Farm’s actions with regard to a 2007 accident which took place under strikingly similar circumstances. The two accidents share several' important commonalities. First, in both accidents, Mr. Forvendel was injured while occupying his own vehicle, insured by State Farm. Second, at the time of both accidents, Mr. Forvendel carried UM coverage under his State Farm insurance policy. Third, Louisiana’s “anti-stacking statute,” discussed below, was in effect at the time of both accidents. Finally, at the time of both accidents, Mr. For-vendel resided with his mother, who also carried UM coverage pursuant to her own State Farm policy. . - ^Following the 2007 accident, Mr. For-vendel recovered the limits of his own State Farm UM policy. Subsequently, he sought additional recovery under his mother’s Státe Farm UM policy. On June 9, 2008, a State Farm manager wrote Mr. Forvendel’s attorney a letter with reference to the 2007 accident and Deborah Forvendel’s UM policy, stating that, “given the language in the policy ,., your client does qualify as an insured for Uninsured Motorist coverage.” Consequently, State Farm allowed Mr. Forvendel to recover under both policies in effect at the time of the 2007 accident. Mr. Forvendel argues that State Farm, in allowing him to recover under both policies following the 2007 accident, waived its defense to allowing him to recover under his mother’s UM policy with regard to the July 2013 accident. In response to this argument, State Farm contends, that its behavior subsequent to the 2007 accident is irrelevant and cannot be used to create or expand UM coverage or recovery for Mr. Forvendel under his mother’s policy with regard to the 2013 accident. The matter proceeded to a bench trial on August 18, 2016. Prior to trial, the parties entered into, inter alia, the following stipulations. First, the parties stipulated that Mr. Forvendel was the owner and operator of the Chevrolet Equinox involved in the motor vehicle accident that occurred on July 19, 2013. Second, the parties stipulated that Mr. Forvendel had UM coverage through State Farm, and that State Farm had allowed Mr. Forven-del to recover the limits of his own UM policy prior tó trial. Finally, Mr. Forvendel stipulated that “his cause of action does not exceed $50,000, exclusive of interest and costs.” At trial, Mr. Forvendel and Deborah Forvendel both testified. Mr. Forvendel testified that after sustaining back injuries in his more recent accident, he had been forced to stop treatment because .he was unable to afford further treatment. Deborah Forvendel testified that she had been a State Farm customer for over twenty five years, and that her insurance policy had remained essentially unchanged during that Istime. She further testified that she was never notified that State Farm’s decision to allow Mr. Forvendel to recover under her policy for his 2007 accident had been in error. . Two State Farm employees also testified at trial. Aaron Angel, an underwriting team manager, confirmed that only minor changes to Deborah Forvendel’s policy had been made since 2007.[1] Further, Mr. Angel testified that Mr. Forvendel should not have been allowed to recover under his mother’s UM policy after the 2007 accident because “he was paid under his own policy and under Louisiana state law, you cannot stack coverage.” He also admitted that, to his knowledge, there had been no major changes in Louisiana’s anti-stacking provisions since then. He further testified that he had no knowledge of' any notice having ever been sent to either Mr. Forvendel or his mother to inform them that State Farm’s previous payment had been in error. Paul Robichaux, the State Farm manager who handled Mr. Forvendel’s claim for recovery under his mother’s UM policy in connection with the 2007 accident, also testified at trial. Mr. Robichaux testified that “the claim handler conducted an investigation and submitted a report.to me and unfamiliar with the coverage, I contacted team managers in Louisiana.” He further testified that, being presented with the question of “whether or not a resident relative could select” UM 'coverage, he received “conflicting information” but ultimately decided to extend coverage to Mr. Forvendel under his mother’s policy. Mr. Robichaux also testified that although he now believes that the decision following the 2007 accident was incorrect, he had no knowledge of any attempt by State Farm to inform the Forvendel family of the error. LOn September 27, 2016, the trial court entered written judgment in favor of Mr. Forvendel, awarding him fifty thousand dollars ($50,000.00) in general and special damages, plus court costs and judicial interest. In its written reasons for judgment, the trial court found that, “under the same circumstances and with the same anti-stacking statute in effect, State Farm previously interpreted the agreement between the parties to cover plaintiff under his mother’s UM policy,” therefore finding that Mr. Forvendel “may collect UM benefits on an automobile insurance policy issued to his mother ... just as State Farm allowed him to do in 2007.” The instant appeal follows. Discussion On appeal, State Farm asserts three assignments of error. First, State Farm claims that the trial court erred in finding that its previous payment to Mr. Forven-del with reference to his 2007 accident allows Mr. Forvendel to collect uninsured motorist benefits in reference to his 2013 accident. In its second and third assignments of error, State Farm claims that the trial court erred in allowing Mr. Forvendel to recover under his mother’s UM policy when he owned and operated the vehicle in question at the time of the accident, the vehicle was not the described vehicle listed in his mother’s insurance policy, and “coverage is excluded by the Louisiana UM statute and the policy language.” In general, a trial court’s finding of fact may not be reversed absent manifest error or unless clearly wrong. Lasyone v. Kan. City S. R.R., 786 So.2d 682, 688 (La. Apr. 3, 2001). A reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s findings; it must instead review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Stobart v. State of Louisiana, Through Department of Transportation and Development, 92-1328 (La. 4/12/93), 617 So.2d 880. The issue to be resolved by a reviewing court is not whether the trier of fact |fiwas right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. The reviewing court must always keep in mind that “if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. at 882-83, citing Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)). Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Wooley v. Lucksinger, 09-0571 (La. 04/01/11), 61 So.3d 507, 555 (quoting Lasyone, supra, at 687-688). , La. R.'S. 22:1295(D)(l)(c),- otherwise described as the “anti-stacking statute,” is contained within Louisiana’s statutory provisions on uninsured motorist coverage. In pertinent part, it provides: If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(l), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following: With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motor: . ist coverage shall apply: (i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary; (ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist- coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant. Louisiana’s public policy strongly favors UM coverage and a liberal construction of the UM statutes. Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La. 1982). The primary objective of Louisiana’s UM coverage laws is to promote the recovery of damages for the victims of automobile accidents when the tortfeasor is without sufficient insurance coverage. Boullt v. State Farm Mut. Auto. Ins. Co., 99-0942 (La. 10/19/99), 752 So.2d 739, 744-745. Stacking of UM coverage occurs when the amount available under one policy is inadequate to satisfy the damages alleged or awarded the 'insured and the same insured seeks to combine or stack one coverage on top of'anothér for the same loss covered under multiple policies or under multiple coverage's contained in a single policy. Id. at 742. The issue of stacking arises exclusively once it has been determined that an individual insured has two or more policies or ■ a ■ single policy covering multiple vehicles applying to the same-loss. Id. at 743. Accordingly, in order to analyze the application of the anti-stacking statute, we must first addre'ss whether Mr. Forvendel was an insured -pursuant to his mother’s State Farm Policy. State Farm raises this issue in then-second and third assignments of error.'In their second and third assignments of error, State Farm claims that the trial- court erred in allowing Mr. Forvendel to recover under his mother’s- UM policy because he was the owner and operator of -the vehicle in question, the vehicle' was not the described vehicle listed in his mother’s- automobile policy, and “coverage is excluded by the Louisiana UM statute and the policy language.” It is undisputed that Mr. For-vendel was not listed as an insured in his mother’s State Farm automobile insurance policy, and that his vehicle was hot the vehicle described in that policy. However, we find that the trial court was not manifestly erroneous in determining that State Farm waived its right to deny coverage to Mr. Forvendel under his. mother’s policy, and that he was insured-under his mother’s policy. Under Louisiana law, “[w]aiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that |7it has been relinquished,” Tate v. Charles Aguillard Ins. & Real Estate, Inc., 508 So.2d 1371, 1374 (La. 1987). In the-context of insurance cases, waiver, unlike equitable estoppel, “may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally- excluded or not covered,” Steptore v. Masco Constr. Co., 643 So.2d 1213, 1216 (La. 1994). Since an insurer is expected to know the contents Of its own policy, a duty of investigation is imposed ■where -an- insurer has “notice - of facts, which would cause a reasonable person to investigate further." Id. In Steptore, an employee was injured while, working on a cargo vessel and sued the vessel’s owner, Masco Construction Co, (“Masco”) and Masco’s insurer, Ocean Marine Indemnity Co. (“Ocean Marine”), who immediately began representing the owner at his defense. Id. at 1215. After six months of actively defending Masco, Ocean Marine denied further coverage after discovering that Masco' had apparently breached a condition in its navigation warranty of its Ocean Marine policy, limiting Masco’s protection to a specified location. Id, at 1217. Maseo sought coverage from Ocean Marine on the grounds that Ocean Marine had waived its .coverage defense by defending Masco for six months before realizing it had the right to void coverage due to Masco’s breach. Id, Despite Ocean Marine’s notice of facts indicating non-coverage, it continued to assume Masco’s defense without taking precautions to reserve its coverage defense by obtaining a non-waiver agreement. Id. at 1216. In holding that Ocean Marine “possessed facts indicating a possible defense to coverage,” thereby effectively waiving any coverage defense that may have existed under the policy, the Court reasoned that adequate notice was provided to the defendant so as to indicate its right to deny coverage. Id. at 1217. In this case, State Farm argues that its past behavior with regard to a past claim cannot be used by the trial court in order to determine that a waiver has taken place. However, other appellate courts have found that an insurer’s past behavior may | «waive terms in its contact. For example, in Green v. Brown, 51-152 (La. App. 2 Cir. 02/15/17), 212 So.3d 718, the Second Circuit Court of Appeal held that an insurer’s past behavior with regard to an insured constituted a waiver of the defense of material misrepresentation. In that case, the insurer renewed the insured’s policy multiple times despite knowing about the insured’s material misrepresentation. Id. at 720. At trial, the insurer’s claims adjuster testified that although she knew about the material misrepresentation, and although ordinarily it would be her responsibility to contact the underwriting department to inform them of said misrepresentation, she had not done so in this case because “she was still in training at the time.” Id. On appeal, the Second Circuit found that the insurer’s “course of conduct of accepting premiums and renewing the insurance policy after admitted knowledge of the alleged misrepresentation demonstrates conduct that is entirely inconsistent with an intent to void the policy and coverage.” Id. at 723-24. Similarly, in this case, we find that State Farm’s course of conduct with regard to its relationship with Brandon and Deborah For-vendel is directly relevant to the question of whether or not State Farm’s conduct constituted a waiver. In its arguments in support of its appeal, State Farm relies heavily on this Court’s decision in Monju v. Continental Casualty Co., 487 So.2d 729 (La.App. 5th Cir. 1986). Specifically, State Farm argues that the trial court’s finding that Mr. For-vendel could recover under his mother’s policy contravenes this Court’s, holding in Monju. However, we find Monju to be inapplicable to the case at bar. Monju addresses the issue of whether the doctrine of equitable estoppel can be used to expand insurance coverage beyond that set forth in an insurance contract. In this case, Mr. Forvendel is claiming that State Farm cannot receive the benefit of Louisiana’s anti-stacking statute under the doctrine of waiver, not equitable 19estoppel.[2] Accordingly, this Court’s holding in Monju is irrelevant to the question of whether State Farm waived its defenses to coverage in this case. Therefore, we turn to the .question of whether State Farm’s conduct in this ease satisfies the elements of waiver, as set forth in Tate, supra. It is undisputed that Mr. Forvendel was listed as a “household member” rather than an “insured” in Deborah Forvendel’s policy, both at. the time of the 2007 accident and at the time of the accident that, is the subject of this litigation. Accordingly, State Farm would, under normal circumstances, -have a right to deny coverage based on this distinction. See, e.g., Howell v. Balboa Ins. Co., 564 So.2d 298, 301-02 (La. 1990). Furthermore, as the issuer of the insurance policy at issue in both accidents,. State Farm clearly had notice of the provisions in its own policy, satisfying the second element required to prove waiver under Tate. Finally, with regard to the intentional relinquishment of State Farm’s known right to deny coverage in this case, the letter provided by State Farm to Mr. For-vendel’s attorney with reference to Deborah Forvendel’s policy specifically stated that “given the language in the policy .. .your client does qualify as an insured for Uninsured Motorist coverage” (emphasis added). Accordingly, we find that State Farm’s course of conduct waived its defense with regard to Mr. Forvendel’s status as an “insured” under his mother’s policy. Therefore, the trial court did not err in finding that Mr. Forvendel was insured • under his mother’s policy. Consequently, we find that State Farm’s second and third assignments of error are without merit. Next, having found that Mr. Forvendel is an insured under both his mother’s and his own UM policies, we turn to State Farm’s first assignment of error, which | inaddresses whether the trial court manifestly erred in allowing Mr. Forvendel to stack UM coverage. We find no manifest error in the trial court’s determination that State Farm waived its defense under the anti-stacking statute. As a preliminary matter, we note that an insurance company may extend insurance coverage beyond that required by Louisiana law, including the anti-stacking statute. In Livas v. State Farm Mut. Auto. Ins. Co., 99-1169 (La. App. 1 Cir. 07/17/00), 797 So.2d 694, the First Circuit Court of Appeal held that, “despite the clarity of the law,” an insurance company had expanded coverage beyond the anti-stacking statute based on language contained in its policy. This holding supports the conclusion that the limits on recovery in the anti-stacking statute, like other possible defenses to coverage, are subject to modification by the insurer. Accordingly, we turn to the question of whether State Farm’s conduct waived its defense to coverage pursuant to the anti-stacking statute. With regard to the first element of waiver, there is no dispute that ordinarily, State Farm would have “an existing right” to deny coverage to Mr. For-vendel based on Louisiana’s anti-stacking statute. See Nall v. State Farm Mut. Auto. Ins. Co., 406 So.2d 216, 219 (La. 1981). Next, we consider whether the trial court erred in finding that State Farm had notice of Louisiana’s anti-stacking statute. We find no reason to disturb the trial court’s finding with'regard to this issue. The trial court heard testimony from multiple State Farm employees concerning State Farm’s internal processes in reference to Mr. Forvendel’s 2007 accident. That testimony reflects that, following the 2007 accident, State Farm knew there was a question concerning Mr. Forvendel’s ability to recover under both his own policy and Deborah Forvendel’s policy. In Steptore, supra, the Louisiana Supreme Court found the notice requirement of waiver to be met where the pleadings filed in the case clearly demonstrated the basic facts needed by the insurer to deny coverage. Similarly, in this case, it is uncontested Inthat State Farm was aware of Mr. Forvendel’s intent to recover under both policies following his accident in 2007. Accordingly, we find that the trial court did not err in finding that State Farm had sufficient notice in this ease to knowingly waive this defense. Finally, State Farm’s conduct with regard to Mr. Forvendel’s 2007 accident clearly meets the third element of waiver set forth in Tate. State Farm not only allowed Mr. Forvendel to stack UM coverage under essentially identical circumstances, it overtly confirmed his ability to do so in writing. Furthermore, despite its clear knowledge of its error regarding payment of the claim for the 2007 accident, State Farm continued to accept premiums from both Deborah Forvendel and Brandon Forvendel and admittedly never made any effort to communicate its error to them until after the 2013 accident, when it attempted to deny coverage under Deborah Forvendel’s policy. We find no error in the trial court’s conclusion that State Farm behaved in a manner so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. In his response to State Farm’s appellate brief, Mr. Forvendel argues that he is entitled to an award in excess of fifty thousand dollars ($50,000.00) pursuant to La. R.S. 22:1973. Mr! Forvendel did not advance this argument either in his petition or at trial, and sighed a stipulation prior to trial confirming that his damages in this case did not exceéd fifty thousand dollars ($50,000.00). Louisiana courts have repeatedly held that La. R.S. 22:1973 is penal in nature, and its provisions 'are therefore to be strictly construed. Hernandez v. Continental Cas. Ins. Co., 615 So.2d 484 (La. App. 4 Cir. 1993), writ denied 620 So.2d 850 (La. 1993). In order to assert a claim for damages under La. R.S. 55:1973, a plaintiff must allege that an insurer committed one of the enumerated acts set out in the statute. Spear v. Thong Ngoc Tran, 96-1490 (La. App. 4 Cir. 09/18/96), 682 So.2d 267, 269. In this case, Mr. 1! ¡.Forvendel never alleged a breach of La. R.S. 22:1973, either in his petition or at trial. Accordingly, we find this request to be without merit. For the foregoing reasons, we find that the trial court did not manifestly err in its judgment allowing Mr. Forvendel to recover under his mother’s UM policy. Accordingly, we affirm the judgment of the trial court in this matter. AFFIRMED DISSENTS WITH REASONS MEJ . Mr. Angel testified that Deborah Forvendel’s ex-husband and his vehicle had been removed from the policy in October 2007, and that her address had been updated. None of the changes made to Deborah Forvendel’s policy in 2007 involved her son, Brandon Forvendel. . The terms "waiver” and “estoppel” are often used interchangeably, as both are equitable principles that may result in modification of coverage provided by a policy based on the conduct of the parties involved. However, waiver and estoppel are significantly distinct concepts that must be discussed independently, See e.g. Orleans Parish Sch. Bd. v. Lexington Ins. Co., 12-CA-1686 (La. App. 4 Cir. 06/05/13), 118 So.3d 1203, 1219.