# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 18-442


**BRANDON MATT AND CATHY WEST**

**VERSUS**

**SAFEWAY INSURANCE COMPANY OF LOUISIANA, ET AL.**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 16-C-1552-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
D. Kent Savoie, Judges.


**AFFIRMED.**

**Holli K. Yandle**
**Tracy L. Oakley**
**Angelique P. Provenzano-Walgamotte**
**W. Brett Cain**
**Michael W. Landry**
**400 E. Kaliste Saloom Rd., Ste. 4300 (70508)**
**P. O. Box 92807**
**Lafayette, LA 70509**
**(877) 323-8040**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Safeway Insurance Company of Louisiana**


**Taylor J. Bassett**
**Jeffrey Michael Bassett**
**Kathleen E. Ryan**
**Morrow, Morrow, Ryan, Bassett & Haik**
**P. O. Drawer 1787**
**Opelousas, LA 70571-1787**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Brandon Matt**
    **Cathy West**

**Gregory John Laborde**
**Amy E. Boudreaux**
**Daigle Rayburn LLC**
**P. O. Box 3667**
**Lafayette, LA 70502-3667**
**(337) 234-7000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Justin Semien**

**SAVOIE, Judge.**

Safeway Insurance Company ("Safeway") appeals the trial court's judgment rendered in favor of Plaintiffs for damages caused by Justin Semien in connection with an auto accident that occurred on February 27, 2016. It specifically challenges the trial court's finding that an insurance policy issued to Demetrius Rubin by Safeway provided liability coverage for the subject accident. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2015, Safeway issued a policy of automobile insurance to Demetrius Rubin and his wife Dedra that provided coverage with respect to a 2002 Ford Expedition. The policy had a six-month term. During the first six months, a 1997 Buick LeSabre was added and then deleted from the policy, and a 2000 Lincoln Town Car was also added. The policy was renewed on February 13, 2016, and remained effective through August 13, 2016.

On February 16, 2016, a 1993 Lincoln Town Car was added to the Rubins' policy. Subsequently, on February 26, 2016, Defendant Justin Semien approached Mr. Rubin and/or Mr. Rubin's son, Demetrius Coleman, to purchase the 1993 Town Car. Late afternoon on Friday, February 26, 2016, Mr. Semien paid Mr. Rubin and/or Mr. Coleman $2,000 in cash for the vehicle and indicated he would pay an additional $300 at a later date. The parties dispute whether the transaction constituted a completed sale of the vehicle and whether it was Mr. Rubin or Mr. Coleman who owned the 1993 Town Car at the time of the transaction. According to Mr. Rubin, the transaction was not yet completed because Mr. Semien still needed to transfer the title and plates to his name, register the vehicle, and pay the remaining $300 balance. Mr. Rubin further noted that because those events had not yet taken place, he had authority to tell Mr. Semien whether he could drive the vehicle that weekend. Mr. Rubin ultimately gave Mr. Semien the keys to the vehicle and allowed him to leave with it.

The following day, February 27, 2016, Mr. Semien drove the 1993 Town Car and was involved in an auto accident with Plaintiffs Brandon Matt and Cathy West. On February 29, 2016, following the Rubins' call to their insurance agent, the 1993 Town Car was deleted from the policy, as reflected by a policy endorsement dated the same day. Following the deletion of the 1993 Town Car from the policy, the policy covered only the Rubins' 2000 Lincoln Town Car.

On April 14, 2016, Mr. Matt and Ms. West filed a Petition against Mr. Semien and Safeway seeking damages arising out of the February 27, 2016 auto accident. Safeway filed an Answer on May 16, 2016. Therein, it denied coverage, alleging that while it had previously issued a policy to Mr. Rubin covering the 1993 Town Car, Mr. Rubin "did not have an insurable interest at the time of the accident" because the vehicle had been sold to Mr. Semien on February 26, 2016. Safeway also alleged that coverage was not available under the policy because Mr. Rubin failed to seek or obtain consent from Safeway to transfer or assign his interest under the policy to Mr. Semien, as required by the policy.

The Safeway policy issued to Mr. Rubin was renewed again in August 2016 for an additional six-month term through February 2017. At the time of renewal, it provided coverage only with respect to the Rubins' 2000 Lincoln Town Car. Pursuant to policy endorsements, on January 12, 2017, a 1997 Buick LeSabre was added to the policy, and on January 17, 2017, it was deleted from the policy.

On November 7, 2016, Safeway filed a Supplemental and Amended Answer, asserting an additional coverage defense based on alleged material misrepresentations made in connection with Mr. Rubin acquiring insurance from Safeway. Specifically, Safeway asserted that Mr. Rubin intentionally failed to disclose that his son, Demetrius Coleman, was an unlicensed resident of Mr. Rubin's household and a driver of the vehicles insured under the policy. In addition, Safeway alleged that Mr. Rubin misrepresented on the endorsement application that sought to add the 1993 Town Car

2

to the policy that he owned the Town Car, when it was actually Mr. Coleman who was the owner. Therefore, according to Safeway, the policy issued to Mr. Rubin should be considered void ab initio because of the material misrepresentations made by Mr. Rubin.

The Safeway policy was renewed again on February 16, 2017, for an additional six-month term through August 16, 2017. At the time, it provided coverage for the 2000 Lincoln Town Car. Endorsements to the policy reflect that a 1993 Buick Roadmaster was added on March 6, 2017, and then deleted on March 20, 2017. Also in March 2017, the policy was set not to renew at the end of the term. Applicable premiums were collected through the end of the policy, and no premium payments have been returned to the Rubins.

A bench trial was held March 26, 2018. The trial judge ultimately rendered a $17,250.15 judgment against Safeway and Mr. Semien, finding Mr. Semien solely at fault and that the Safeway policy provided coverage to the 1993 Town Car at the time of the accident. In its reasons for ruling, the trial judge found that Safeway had waived the coverage defenses it asserted, noting

> [T]he agent was aware at that time that there was another gentlemen named Demetrius Coleman who may have also gone by Demetrius Rubin . . . but the real Mr. Rubin signed that acknowledging that there was at least a Demetrius Coleman in his household. And even after that they issued and delivered the policy, accepted the premium. This accident happened, they continued to issue the policy, continued to accept premiums and continued to renew it even despite what obviously had to be a red flag with the number of vehicles that were added and deleted throughout the course of the policy. . . .
>
> I'll note too . . . not even two months after the accident there was a lawsuit. Claims should have known this was in litigation, claims should have had an opportunity to investigate this thing and if they had not discovered before that there were potentially . . . some problems with the policy . . . they certainly should have known a lot earlier in time than 2017, when they ultimately chose not to renew the policy.

Defendant Safeway appeals. It states the following as assignments of error:

1. The trial court committed manifest error when it concluded that Safeway Insurance Company of Louisiana waived all of its defenses by failing to non-renew or cancel the policy quickly enough.

3

2.  The trial court committed manifest error when it failed to find that there was no insurable interest in the 1993 Lincoln Towncar once it was purchased by Justin Semien on the day prior to the accident.

3.  The trial court committed manifest error when it failed to find that there was no assignment of interest in the Safeway Insurance Company of Louisiana policy to Justin Semien when Justin Semien purchased the 1993 Lincoln Towncar.

4.  The trial court committed manifest error when it failed to find that Demetrius RUBIN misrepresented material facts at the time of the application for the Safeway policy and at the time the 1993 Lincoln Towncar was added to the Safeway policy.

## STANDARD OF REVIEW

As stated by the Louisiana Supreme Court in *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (internal citations omitted):

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

We further keep in the mind the following principles when reviewing the insurance policy at issue:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.
>
> . . . .
>
> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. . . .
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written.

4

> Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.

*Cadwallader v. Allstate Ins. Co*, 02-1637, pp. 3-4 (La. 6/27/03), 848 So.2d 577, 580 (internal citations omitted).

## ANALYSIS

Safeway challenges the trial court's finding that it waived its coverage defenses and urges us to find that the policy at issue does not provide liability coverage for damages arising out of Mr. Semien's use of the 1993 Town Car because (1) Mr. Rubin no longer had an insurable interest at the time of the accident because he had sold the 1993 Town Car to Mr. Semien the day before; (2) Mr. Rubin did not obtain consent from Safeway to assign his interest in the policy; and (3) Mr. Rubin made material misrepresentations to Safeway in the course of applying for coverage.

### *Insurable Interest:*

On appeal, Safeway argues that, regardless of the terms of its policy, liability coverage is not available because, at the time of the accident, Mr. Rubin did not have an insurable interest in the vehicle as required by La.R.S. 22:853 because he had sold it to Mr. Semien. Louisiana Revised Statutes 22:853, entitled "Insurable interest required, property insurances," states as follows (emphasis added):

> A. No contract of insurance **on property** or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the **things** insured.
>
> B. "Insurable interest" as used in this Chapter means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.

Further relying on *Luke v. Theriot*, 195 So.2d 685 (La.App. 1 Cir. 1967), Safeway argues that Mr. Rubin did not have the requisite insurable interest in the 1993 Town Car as contemplated by La.R.S. 22:853 because the only relationship between Mr. Rubin and Mr. Semien was that of buyer and seller.

However, as noted by Plaintiffs-Appellees, in 1978, the Louisiana Supreme Court expressly held that the insurable interest required by then-applicable La.R.S. 22:614, which is the predecessor to the current La.R.S. 22:853, "relates only to property insurance . . . [and] therefore has no relevance in the case at bar." *DiGerolamo v. Liberty Mut. Ins. Co.,* 364 So.2d 939, 941 (La.1978). Therefore, Safeway's argument fails given the inapplicability of the statute it relies upon.

Moreover, the Louisiana Supreme Court has recognized that there is no controlling Louisiana jurisprudence or applicable statutes that impose an insurable interest requirement for liability policies. *Id*.; *Cousin v. Page*, 372 So.2d 1231 (La.1979). Safeway has not argued otherwise in its brief, and we are not inclined to impose an insurable interest requirement for an insured to obtain or maintain liability insurance, absent specific language in the policy itself. *See United Fire and Cas. Co. v. Reeder*, 9 F.3d 15 (5th Cir. 1993).

The Safeway policy at issue provides that, with respect to "owned automobiles," liability coverage is afforded to "persons insured," which includes "[t]he named insured" and "any other person using such automobile to whom the named insured has given the expressed or implied permission, provided the use is within the scope of such permission." The policy further defines "owned automobiles" as an "**automobile described in this policy**" (emphasis added). The 1993 Town Car was described on an endorsement to the policy that was effective at the time of the accident. Safeway does not argue that Mr. Semien should not be considered as a "person[] insured" under the policy and does not point to any other policy provisions that would exclude liability coverage for an "automobile described in the policy" if that automobile is sold to someone else. Therefore, we conclude that the express terms of the policy at issue provide liability coverage for the subject accident.

We further note that Safeway collected premiums for coverage of the subject Town Car from the time it was added to the policy through the time it was deleted on

6

February 29, 2016. Safeway's failure to provide a refund of any premiums paid for the subject Town Car from the date of the purported sale through the date the vehicle was deleted from the policy is inconsistent with its position that coverage on the subject Town Car automatically terminated on the date of the purported sale.

In addition, Rhonda Marshall, an underwriting supervisor for Safeway, testified at trial that for an insured to add a vehicle to a policy, he is required to provide proof of ownership to the agent such as a bill of sale, a buyer's order, a purchase agreement, notarized title, or registration. However, for an insured to delete a vehicle from his policy, all that is required is an endorsement application, unless the insured seeks to backdate the effective date of the deletion. Ms. Marshall explained that an insured's request to backdate the deletion of a vehicle from a policy must be processed internally by Safeway's underwriting department, rather than the agent, and Safeway requires proof supporting the backdated deletion such as a bill of sale, cancelled plates, or proof that the vehicle was totaled in an accident. There is evidence in the record suggesting that as of February 26, 2016, the date of the purported sale, the title had not been transferred, the bill of sale had not been completed, the vehicle had not been registered in Mr. Semien's name, and Mr. Semien had not obtained a license plate for the vehicle. It is unclear whether this would have been sufficient had Mr. Rubin or his agent sought to backdate the deletion request.

Ms. Marshall also testified that Safeway became aware of the alleged sale on Monday, February 29, 2016, and thereafter it took the position that coverage was no longer provided as of the sale to Mr. Semien on February 26, 2016. When questioned about why the vehicle still appeared on the declarations page as of February 27, 2016, the date of the accident, despite Safeway's coverage position, Ms. Marshall testified:

> Mr. Rubin didn't come in to remove the vehicle until the Monday. Based on the information that I saw, it appears that the agent, at all times, did a loss notice, filled out a claims form, made notes in a file that it was brought to our attention that the vehicle was sold Friday afternoon. And

she did the request to delete the vehicle on Monday and completed a loss notice to send to Safeway Insurance Company.

The Safeway agent's failure to seek a backdated deletion after purportedly learning of the February 26, 2016 sale, and Safeway's failure to backdate the deletion of the subject Town Car or issue a refund of premium payments made for coverage are contrary to Safeway's position that coverage automatically terminated on February 26, 2016. Therefore, we further find that Safeway's conduct constitutes a waiver of any coverage defense that may have existed based upon the purported sale to Mr. Semien. See *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371 (La.1987). Safeway's arguments on appeal that coverage is not available because Mr. Rubin had no insurable interest in the subject Town Car lack merit.

### *Assignment of Interest in the Policy:*

On appeal, Safeway also argues that the policy does not afford liability coverage for the accident at issue because Mr. Rubin did not obtain consent from Safeway as required by the following provision in the "Conditions" section of the policy:

> **15**. **Assignment**. Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the insured named in the declarations, or his spouse if a resident of the same household shall die, this policy shall cover (1) the survivor as the named insured, (2) his legal representative as the named insured but only while acting with the scope of his duties as such, (3) any person having proper temporary custody of an owned automobile, as an insured, until the appointment and qualification of such legal representative, and (4) under Division 1 of Part III any person who was a relative at the time of such death."

This argument lacks merit as there is no basis for us to find that Mr. Rubin assigned any interest in the policy to Mr. Semien. Safeway does not refer to any evidence in the record suggesting that Mr. Rubin assigned, or attempted to assign, his own interest as policyholder or insured under the policy to Mr. Semien. Rather, Mr. Semien, as a user of the 1993 Town Car described in the policy, is, on his own, considered an insured under the express terms of the policy, and Safeway does not suggest otherwise on appeal.

8

*__Material Misrepresentations__*

Safeway's final defense to coverage is based on alleged material misrepresentations made by Mr. Rubin when initially acquiring automobile insurance and with adding the 1993 Town Car to the policy. Safeway argues that Mr. Rubin's son, Mr. Coleman, purchased the 1993 Town Car and that he was the true owner at the time it was added to Mr. Rubin's policy, despite what was reflected on Mr. Rubin's endorsement application. Safeway also notes Mr. Rubin's testimony suggesting that all of Mr. Coleman's vehicles were put into Mr. Rubin's name because the insurance premiums would be lower. In addition, Safeway argues that Mr. Rubin intentionally failed to disclose Mr. Coleman as a resident of his household when he initially obtained the insurance policy in 2015.

"As an initial matter, the specific provisions of the insurance agreement must be examined for language pertaining to material misrepresentations." *Green v. Brown*, 51,152, p. 7 (La.App. 2 Cir. 2/15/17), 212 So.3d 718, 722. The "Conditions" section of the Safeway policy at issue states in part as follows:

> **16**. **Misrepresentation**. This policy shall be voidable, at our option, if the named insured or any other insured has, with an intent to deceive, conceal or misrepresent any material fact concerning any matter regarding completion of this application.

Therefore, under the terms of the policy, an insured's material misrepresentations do not render the policy void ab initio, but rather merely provide Safeway with *the option* to void the policy at its discretion. When a policy is rescinded, or voided, "it is considered never to have been in effect and thus there would [be] no coverage at all." *Vest v. Richardson*, 253 So.2d 97, 101 (La.App. 4 Cir. 1971).

The trial court found that Safeway had waived its material misrepresentation defenses to coverage. Therefore, we will consider whether the record contains sufficient evidence to support a finding that Safeway waived its option to void the policy and deny coverage. *See Green*, 212 So.3d 718.

> Waiver is usually defined as the intentional relinquishment of a known power or privilege. Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.
>
> . . . .
>
> [W]aiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered. Of course, reliable proof of such a knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations generally, falls on the party who demands performance.

*Tate,* 508 So.2d at 1373-1375 (internal citations omitted).

Safeway's underwriting supervisor, Ms. Marshall, testified at trial that she has "never known [Safeway] to actually void a policy in Louisiana, like . . . back to inception." Rather, according to Ms. Marshall, if Safeway learns of material misrepresentations, it will either cancel the policy if it is close enough to the policy's inception date, or it will set the policy to not renew, which it calls "DNR," so that the policy will expire at the end of the term.

Safeway notes on appeal that it first learned of the alleged material misrepresentations following the October 3, 2016 deposition of Mr. Rubin. Thereafter, Safeway amended its Answer on November 7, 2016, to assert material misrepresentation defenses. Safeway also notes that Mr. Coleman's deposition taken in December 2016 confirmed the alleged misrepresentations made by Mr. Rubin. Despite this knowledge, however, Safeway did not set the policy to "DNR," and in fact, renewed the policy in February 2017. We also note that in January 2017, Safeway approved the Rubins' endorsement applications to add another vehicle to the policy and then delete that same vehicle at a later date. It was not until March 2017 that Safeway set the policy to not renew at the end of the term, and Safeway continued to collect premiums from the Rubins throughout the life of the policy.

10

We conclude that Safeway's renewal of the policy in February 2017, despite its knowledge of the alleged misrepresentations as of October 3, 2016, as well as its continuous collection of premiums through the end of the term, are sufficient to support the trial court's finding that Safeway waived its option to void the policy for material misrepresentations.

## **CONCLUSION**

For the reasons stated above, the trial court's judgment is affirmed. Costs of this appeal are assessed to Defendant-Appellant, Safeway Insurance Company of Louisiana.

**AFFIRMED.**